# No. 12-41139

In the United States Court of Appeals
for the Fifth Circuit

---

## The Estate of Montana Lance, et al

*Plaintiff - Appellants,*

v.

## Lewisville Independent School District,

*Defendant - Appellee.*

---

## Appellant's Record Excerpts

---

**On Appeal From The United States District Court
For The Eastern District Of Texas, Sherman Division
4:11-cv-00032-RC-ALM**

---

Martin Jay Cirkiel
Christopher Bennett

Cirkiel & Associates PC
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
512.244.6658
512.244.6014 (fax)

Steven Gregory White
Elizabeth Ryan

400 Austin Ave., Ste. 103
Waco, Texas 76701
254.307.0097
866.521.5569 (fax)

**Attorney for Appellants**

## TABLE OF CONTENTS

DOCKET SHEET...........................................................................................................Tab 1

SECOND AMENDED COMPLAINT.........................................................................Tab 2

REPORT AND RECOMMENDATION ON MOTION TO DISMISS...................................Tab 3

ORDER ADOPTING REPORT AND RECOMMENDATION ON MOTION TO
DISMISS....................................................................................................................Tab 4

REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY
JUDGEMENT...............................................................................................................Tab 5

ORDER ADOPTING REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY
JUDGEMENT...............................................................................................................Tab 6

FINAL JUDGMENT.....................................................................................................Tab 7

NOTICE OF APPEAL...................................................................................................Tab 8

# CERTIFICATE OF FILING AND SERVICE

I, Greg White, hereby certify pursuant to Fed. R. App. P. 25(d) that, on March 11, 2013, the foregoing Brief for Plaintiff-Appellants was filed through the CM/ECF system and served electronically on the individuals listed below:

Thomas J. Brandt
Joshua A. Skinner
Fanning, Harper, Martinson, Brandt & Kutchin, PC
Two Energy Square
4849 Greenville Ave., Suite 1300
Dallas, Texas 75206

/s/ Greg White
Greg White

# TAB 1

JURY, CASREF, APPEAL

**U.S. District Court [LIVE]**
**Eastern District of TEXAS (Sherman)**
**CIVIL DOCKET FOR CASE #: 4:11-cv-00032-RC-ALM**

The Estate of Montana Lance et al v. Kyer et al          Date Filed: 1/21/2011
Assigned to: Judge Ron Clark                             Jury Demand: Both
Referred to: Magistrate Judge Amos L. Mazzant            Nature of Suit: 440 Civil Rights: Other
Demand: $705032704                                       Jurisdiction: Federal Question
Lead Docket: None
Related Cases: None
Cases in other court: None
Cause: 28:1331 Federal Question: Other Civil Rights

**Mediator**
--------------------------

**Mary M Burdin**                     represented by  **Mary M Burdin**
                                                       Burdin Mediations
                                                       4514 Cole Ave, Ste 1450
                                                       Dallas, TX 75205
                                                       214/528-1411
                                                       PRO SE

V.

**Plaintiff**
--------------------------

**The Estate of Montana Lance**       represented by  **Melissa Waden Wray**
                                                       Beard Kultgen Brophy Bostwick Dickson
                                                       & Squires
                                                       220 South 4th Street
                                                       Waco, TX 76701
                                                       254-776-5500
                                                       Fax: 254-776-3591
                                                       Email: wray@thetexasfirm.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Roderick Seller Squires**
                                                       Beard Kultgen Brophy Bostwick Dickson
                                                       & Squires
                                                       220 South 4th Street
                                                       Waco, TX 76701
                                                       254-776-5500
                                                       Fax: 254-776-3591
                                                       Email: squires@thetexasfirm.com
                                                       *ATTORNEY TO BE NOTICED*

**Ryan Charles Johnson**
Beard Kultgen Brophy Bostwick Dickson
& Squires
220 South 4th Street
Waco, TX 76701
254-776-5500
Fax: 254-776-3591
Email: johnson@thetexasfirm.com
*ATTORNEY TO BE NOTICED*

**Martin Jay Cirkiel**
Cirkiel & Associates PC
1901 Palm Valley Blvd
Round Rock, TX 78664
512/244-6658
Fax: 15122446014
Email: marty@cirkielaw.com
*ATTORNEY TO BE NOTICED*

Jason Lance                          represented by **Melissa Waden Wray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roderick Seller Squires**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Charles Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Martin Jay Cirkiel**
(See above for address)
*ATTORNEY TO BE NOTICED*

Deborah Lance                        represented by **Melissa Waden Wray**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roderick Seller Squires**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ryan Charles Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Martin Jay Cirkiel**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

Defendant
--------------------------

Carol Kyer                          represented by  **Thomas Phillip Brandt**
                                                     Fanning Harper Martinson Brandt &
                                                     Kutchin PC- Dallas
                                                     4849 Greenville Ave.
                                                     Suite 1300
                                                     Dallas, TX 75206
                                                     214/369-1300
                                                     Fax: 12149879649
                                                     Email: tbrandt@fhmbk.com
                                                     *ATTORNEY TO BE NOTICED*

Steve Waddell                       represented by  **Thomas Phillip Brandt**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

Lea Land                            represented by  **Thomas Phillip Brandt**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

Terry Lowry                         represented by  **Thomas Phillip Brandt**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

Lewisville ISD                      represented by  **Thomas Phillip Brandt**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Francisco J Valenzuela**
                                                     Fanning Harper Martinson Brandt &
                                                     Kutchin PC- Dallas
                                                     4849 Greenville Ave.
                                                     Suite 1300
                                                     Dallas, TX 75206
                                                     214-369-1300
                                                     Fax: 214-987-9649
                                                     Email: fvalenzuela@fhmbk.com
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Joshua Alan Skinner**
                                                     Fanning Harper Martinson Brandt &
                                                     Kutchin
                                                     4849 Greenville Ave
                                                     Ste 1300, Two Energy Square
                                                     Dallas, TX 75206
                                                     214/369-1300
                                                     Fax: 12149879649
                                                     Email: jskinner@fhmbk.com
                                                     *ATTORNEY TO BE NOTICED*

| Filing Date | # | Docket Text |
|---|---|---|
| 1/21/2011 (p.27) | 1 | COMPLAINT against Carol Kyer, Lea Land, Terry Lowry, Steve Waddell ( Filing fee $ 350 receipt number 0540-2851779.), filed by The Estate of Montana Lance, Deborah Lance, Jason Lance. (Attachments: # (1) Civil Cover Sheet)(Cirkiel, Martin) (Entered: 1/21/2011) |
| 1/21/2011 | | Case ASSIGNED to Judge Michael H. Schneider. (baf, ) (Entered: 1/21/2011) |
| 1/21/2011 (p.57) | 2 | NOTICE OF CASE ASSIGNMENT sent to Deborah Lance, Jason Lance, The Estate of Montana Lance (baf, ) (Entered: 1/24/2011) |
| 1/21/2011 (p.58) | 3 | CASE REFERRED to Magistrate Judge Amos L. Mazzant pursuant to a Standing Order. (baf, ) (Entered: 1/24/2011) |
| 1/21/2011 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in this case including a jury or non-jury trial and to order the entry of a final judgment. The form Consent to Proceed Before Magistrate Judge is available here by clicking on the hyperlink and is also on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event Notice of Consent to Proceed Before Magistrate Judge. (baf, ) (Entered: 1/24/2011) |
| 2/28/2011 (p.59) | 5 | WAIVER OF SERVICE Returned Executed Lea Land waiver sent on 1/28/2011, answer due 3/29/2011. (baf, ) (Entered: 3/4/2011) |
| 2/28/2011 (p.60) | 6 | WAIVER OF SERVICE Returned Executed Terry Lowry waiver sent on 1/28/2011, answer due 3/29/2011. (baf, ) (Entered: 3/4/2011) |
| 2/28/2011 (p.61) | 7 | WAIVER OF SERVICE Returned Executed Carol Kyer waiver sent on 1/28/2011, answer due 3/29/2011. (baf, ) (Entered: 3/4/2011) |
| 2/28/2011 (p.62) | 8 | WAIVER OF SERVICE Returned Executed Steve Waddell waiver sent on 1/28/2011, answer due 3/29/2011. (baf, ) (Entered: 3/4/2011) |
| 3/29/2011 (p.63) | 9 | MOTION to Dismiss Official Capacity Claims and Breif by Carol Kyer, Steve Waddell. (Brandt, Thomas) (Additional attachment(s) added on 3/31/2011: # (1) Text of Proposed Order) (baf, ). (Entered: 3/29/2011) |
| | 10 | |

| 3/29/2011 (p.82) | | MOTION to Dismiss *Claims Based on Qualified Immunity and Brief* by Carol Kyer, Lea Land, Terry Lowry. (Brandt, Thomas) (Additional attachment(s) added on 3/31/2011: # (1) Text of Proposed Order) (baf, ). (Entered: 3/29/2011) |
| --- | --- | --- |
| 4/12/2011 (p.99) | 11 | ***SEE DOCUMENT #12***<br><br>Unopposed MOTION for Extension of Time to File by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Text of Proposed Order)(Cirkiel, Martin) Modified on 4/13/2011 (pad, ). (Entered: 4/12/2011) |
| 4/12/2011 (p.103) | 12 | Unopposed MOTION for Extension of Time to File Response/Reply as to [9] MOTION to Dismiss *Official Capacity Claims and Breif*, [10] MOTION to Dismiss *Claims Based on Qualified Immunity and Brief* by Deborah Lance, Jason Lance, The Estateof Montana Lance. (Attachments: # (1) Text of Proposed Order)(Cirkiel, Martin) (Additional attachment(s) added on 4/20/2011: # (2) Text of Proposed Order) (baf, ). (Entered: 4/12/2011) |
| 4/14/2011 (p.107) | 13 | ORDER GRANTING [12] Motion for Extension of Time to File Response/Reply re [9] MOTION to Dismiss *Official Capacity Claims and Breif*, [10] MOTION to Dismiss *Claims Based on Qualified Immunity and Brief*. Replies due by 4/21/2011. Signedby Magistrate Judge Amos L. Mazzant on 4/14/2011. (baf, ) (Entered: 4/14/2011) |
| 4/22/2011 (p.108) | 14 | ORDER TO MEET, REPORT AND APPEAR AT SCHEDULING CONFERENCE - Scheduling Conference set for 6/1/2011 11:00 AM in Ctrm A01 (Sherman - Annex) before Magistrate Judge Amos L. Mazzant. Deadline to file Motions to Transfer 5/28/2011. Hold a meeting as required by FRCP 26(f) by 5/18/2011. Rule 26 Meeting Joint Report due by 5/25/2011. Signed by Magistrate Judge Amos L. Mazzant on 4/22/2011. (baf, ) (Entered: 4/22/2011) |
| 4/25/2011 (p.115) | 15 | Unopposed MOTION for Leave to File *First Amended Complaint* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Text of Proposed Order, # (2) Appendix First Amended Complaint)(Cirkiel, Martin) (Additional attachment(s) added on 4/25/2011: # (3) Text of Proposed Order) (baf, ). (Entered: 4/25/2011) |
| 4/25/2011 (p.146) | 16 | AMENDED COMPLAINT against Lewisville ISD, filed by The Estate of Montana Lance, Deborah Lance, Jason Lance.(Cirkiel, Martin) (Entered: 4/25/2011) |
| 5/5/2011 (p.173) | 17 | ORDER GRANTING [15] Motion for Leave to File Plaintiff's First Amended Complaint. Signed by Magistrate Judge Amos L. Mazzant on 5/5/2011. (baf, ) (Entered: 5/5/2011) |

| Date | No. | Description |
|---|---|---|
| 5/11/2011 (p.174) | 18 | ORDER DENYING AS MOOT [9] Motion to Dismiss; DENYING AS MOOT [10] Motion to Dismiss. Signed by Magistrate Judge Amos L. Mazzant on 5/11/2011. (baf, ) (Entered: 5/11/2011) |
| 5/17/2011 (p.175) | 19 | NOTICE by Deborah Lance, Jason Lance, The Estate of Montana Lance *Certificate of Interested Parties* (Cirkiel, Martin) (Entered: 5/17/2011) |
| 5/18/2011 (p.178) | 20 | MOTION to Dismiss - *Partial Dismissal - 1st Amended Complaint* by Lewisville ISD. (Brandt, Thomas) (Additional attachment(s) added on 5/19/2011: # (1) Text of Proposed Order) (baf, ). (Entered: 5/18/2011) |
| 5/18/2011 (p.191) | 21 | CORPORATE DISCLOSURE STATEMENT filed by Lewisville ISD (Skinner, Joshua) (Entered: 5/18/2011) |
| 5/31/2011 (p.193) | 22 | REPORT of Rule 26(f) Planning Meeting. (Cirkiel, Martin) (Entered: 5/31/2011) |
| 6/1/2011 | | Minute Entry for proceedings held before Magistrate Judge Amos L. Mazzant: Scheduling Conference held on 6/1/2011. (tls, ) (Entered: 6/1/2011) |
| 6/1/2011 (p.202) | 23 | Unopposed MOTION for Extension of Time to File Response/Reply as to [20] MOTION to Dismiss - *Partial Dismissal - 1st Amended Complaint* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Text of Proposed Order)(Cirkiel, Martin) (Additional attachment(s) added on 6/2/2011: # (2) Text of Proposed Order) (baf, ). (Entered: 6/1/2011) |
| 6/1/2011 (p.206) | 24 | SCHEDULING ORDER: Final Pretrial Conference and Trial Setting set for 5/14/2012 at 9:00 AM. Deadline to file Pretrial Materials 4/16/2012. Exchange Privilege Logs by 10/17/2011. Deadline for Pretrial Disclosures 3/16/2012. Amended Pleadings due by 9/1/2011. Discovery Deadline 1/17/2012. Expert Witnesses and Reports on issues for which the party bears the burden of proof due by 11/16/2011. Expert Witnesses and Reports on issues for which the party does not bear the burden of proof 12/16/2011. Joinder of Parties due by 9/1/2011. Proposed Jury instructions due by 4/16/2012. Mediation Completion due by 1/23/2012;Deadline to notify Court of Mediator 1/9/2012. Deadline to file Motions to Dismiss 9/16/2011. Dispositive Motions due by 1/30/2012. Joint Proposed Pretrial Order due by 4/16/2012. Motions in Limine due by 4/16/2012. Signed by Magistrate Judge Amos L. Mazzant on 6/1/2011. (baf, ) (Entered: 6/1/2011) |
| 6/2/2011 (p.215) | 25 | ORDER GRANTING [23] Motion for Extension of Time to File Response/Reply re [20] MOTION to Dismiss - *Partial* |

| | | |
|---|---|---|
| | | *Dismissal - 1st Amended Complaint.* Replies due by 6/3/2011. Signed by Magistrate Judge Amos L. Mazzant on 6/2/2011. (baf, ) (Entered: 6/2/2011) |
| 6/3/2011 (p.216) | 26 | RESPONSE in Opposition re [20] MOTION to Dismiss - *Partial Dismissal - 1st Amended Complaint filed by Deborah Lance, Jason Lance, The Estate of Montana Lance.* (Attachments: # (1) Text of Proposed Order)(Cirkiel, Martin) (Additional attachment(s) added on 6/3/2011: # (2) Text of Proposed Order) (baf, ). (Entered: 6/3/2011) |
| 6/10/2011 (p.224) | 27 | REPLY to Response to Motion re [20] MOTION to Dismiss - *Partial Dismissal - 1st Amended Complaint filed by Lewisville ISD.* (Brandt, Thomas) (Entered: 6/10/2011) |
| 7/26/2011 | | Set/Reset Scheduling Order Deadlines: Final Pretrial Conference and Trial Setting set for 5/14/2012 at 9:00 AM in Ctrm A01 (Sherman - Annex) before Judge Michael H. Schneider. (baf, ) (Entered: 7/28/2011) |
| 8/10/2011 (p.233) | 28 | NOTICE by The Estate of Montana Lance re [26] Response in Opposition to Motion, *of Supplemental Authority* (Attachments: # (1) Appendix Doe v. Covington)(Cirkiel, Martin) (Entered: 8/10/2011) |
| 8/23/2011 (p.286) | 29 | REPORT AND RECOMMENDATION OF UNITED STATED MAGISTRATE JUDGE re [20] MOTION to Dismiss - *Partial Dismissal - 1st Amended Complaint* filed by Lewisville ISD. Signed by Magistrate Judge Amos L. Mazzant on 8/23/2011. (baf, ) (Entered: 8/23/2011) |
| 8/24/2011 (p.303) | 30 | NOTICE of Designation of Attorney in Charge to Melissa Waden Wray on behalf of All Plaintiffs (Wray, Melissa) (Entered: 8/24/2011) |
| 9/1/2011 (p.306) | 31 | MOTION for Leave to File *Second Amended Complaint* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Exhibit Second Amended Complaint)(Wray, Melissa) (Additional attachment(s) added on 9/6/2011: # (2) Text of Proposed Order) (pad, ). (Entered: 9/1/2011) |
| 9/1/2011 (p.338) | 36 | SECOND AMENDED COMPLAINT against All Defendants, filed by The Estate of Montana Lance, Deborah Lance, Jason Lance.(baf, ) (Entered: 9/8/2011) |
| 9/2/2011 (p.364) | 32 | ***FILED IN ERROR. PLEASE IGNORE***<br><br>Proposed Pretrial Order *on Plaintiff's Motion for Leave to Amend Complaint* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Wray, Melissa) Modified on 9/6/2011 (pad, |

| | | ). (Entered: 9/2/2011) |
|---|---|---|
| 9/6/2011 (p.365) | 33 | OBJECTION to [29] Report and Recommendations *of United States Magistrate Judge* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Wray, Melissa) (Entered: 9/6/2011) |
| 9/6/2011 (p.375) | 34 | OBJECTION to [29] Report and Recommendations by Lewisville ISD. (Brandt, Thomas) (Entered: 9/6/2011) |
| 9/7/2011 (p.385) | 35 | NOTICE of Discovery Disclosure by Deborah Lance, Jason Lance, The Estate of Montana Lance (Wray, Melissa) (Entered: 9/7/2011) |
| 9/9/2011 (p.388) | 37 | ***DEFICIENT DOCUMENT - ATTORNEY MUST REFILE*** <br><br> MOTION to Compel *Disclosure and for Reasonable Expenses, Including Attorney's Fees* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Text of Proposed Order)(Wray, Melissa) Modified on 9/12/2011 (baf, ). (Entered: 9/9/2011) |
| 9/12/2011 | | NOTICE of Deficiency regarding the MOTION TO COMPEL submitted DOCUMENT [37] - NO CERTIFICATE OF CONFERENCE - ALSO, PROPOSED ORDER HAS DATE AND SIGNATURE LINE. Correction should be made by ONE BUSINESS DAY (baf, ) (Entered: 9/12/2011) |
| 9/13/2011 (p.395) | 38 | RESPONSE to Motion re [31] MOTION for Leave to File *Second Amended Complaint filed by Lewisville ISD.* (Attachments: # (1) Text of Proposed Order)(Brandt, Thomas) (Entered: 9/13/2011) |
| 9/13/2011 (p.402) | 39 | MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE GRANTING IN PART AND DENYING IN PART [20] Motion to Dismiss filed by Lewisville ISD, [29] Report and Recommendations. Signed by Judge Michael H. Schneider on 9/13/2011. (baf, ) (Entered: 9/13/2011) |
| 9/16/2011 (p.404) | 40 | ORDER DENYING [31] Motion for Leave to Amend Complaint. Signed by Magistrate Judge Amos L. Mazzant on 9/15/2011. (baf, ) (Entered: 9/16/2011) |
| 9/26/2011 (p.405) | 41 | ANSWER to [16] Amended Complaint by Lewisville ISD.(Brandt, Thomas) (Entered: 9/26/2011) |
| 9/29/2011 | | In accordance with the provisions of 28 USC Section 636(c), you are hereby notified that a U.S. Magistrate Judge of this district court is available to conduct any or all proceedings in |

| | | |
|---|---|---|
| | | this case including a jury or non-jury trial and to order the entry of a final judgment. The form <u>Consent to Proceed Before Magistrate Judge</u> is available on our website. All signed consent forms, excluding pro se parties, should be filed electronically using the event *Notice of Consent to Proceed Before Magistrate Judge*. (baf, ) (Entered: 9/29/2011) |
| 11/16/2011 (p.423) | 42 | Unopposed MOTION to Amend/Correct [24] Scheduling Order,,, by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Wray, Melissa) (Additional attachment(s) added on 11/17/2011: # (1) Exhibit A, # (2) Text of Proposed Order) (baf, ). (Entered: 11/16/2011) |
| 11/28/2011 (p.448) | 43 | ORDER GRANTING [42] Motion to Amend Scheduling/Docket Control Order. Signed by Magistrate Judge Amos L. Mazzant on 11/28/2011. (baf, ) (Entered: 11/28/2011) |
| 11/29/2011 (p.449) | 44 | AMENDED SCHEDULING/DOCKET CONTROL ORDER: Final Pretrial Conference and Trial Setting set for 7/9/2012 at 9:00 AM in Ctrm A01 (Sherman - Annex) before Judge Michael H. Schneider. Discovery Deadline 3/9/2012. Deadline to designate Expert Witnesses and Reports on issues for which the party bears the burden of proof 1/18/2012;Deadline to designate Expert Witnesses and Reports on issues for which the party does not bear the burden of proof 2/15/2012. Mediation Completion due by 2/29/2012. Dispositive Motions due by 3/26/2012. Deadline for pretrial disclosures 5/16/2012. Deadline to file pretrial materials 6/8/2012. Signed by Magistrate Judge Amos L. Mazzant on 11/28/2011. (baf, ) (Entered: 11/29/2011) |
| 11/30/2011 (p.451) | 45 | MOTION for Leave to Exceed Limit on Number of Depositions by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Exhibit A, # (2) Exhibit B, # (3) Exhibit C, # (4) Exhibit D, # (5) Proposed Order)(Wray, Melissa) (Attachment 5 replaced on 12/1/2011) (baf, ). (Entered: 11/30/2011) |
| 12/13/2011 (p.491) | 46 | ***DEFICIENT DOCUMENT - ATTORNEY MUST REFILE*** <br><br> RESPONSE to Motion re [45] MOTION for Leave to Exceed Limit on Number of Depositions *filed by Lewisville ISD*. (Brandt, Thomas) Modified on 12/14/2011 (baf, ). (Entered: 12/13/2011) |
| 12/14/2011 (p.524) | 47 | RESPONSE to Motion re [45] MOTION for Leave to Exceed Limit on Number of Depositions *filed by Lewisville ISD*. (Attachments: # (1) Exhibit Exhibit 1 to Response to Plaintiffs' Motion for Leave to Exceed Limit on Number of Depositions, #(2) Exhibit Exhibit 2 to Response to Plaintiffs' Motion for Leave to Exceed Limit on Number of Depositions, # (3) Exhibit |

| | | |
|---|---|---|
| | | Exhibit 3 to Response to Plaintiffs' Motion for Leave to Exceed Limit on Number of Depositions, # (4) Exhibit Exhibit4 to Response to Plaintiffs' Motion for Leave to Exceed Limit on Number of Depositions)(Brandt, Thomas) (Entered: 12/14/2011) |
| 12/14/2011 | | NOTICE of Deficiency regarding the RESPONSE TO MOTION FOR LEAVE submitted DOCUMENT [46] - EXHIBITS ARE WITHIN THE MAIN DOCUMENT. Correction should be made by ONE BUSINESS DAY (baf, ) (Entered: 12/14/2011) |
| 12/19/2011 | | ORDER denying [45] Motion at this time. Plaintiffs should continue discussions with Defendant in an attempt to resolve this issue. If, after a good faith conference, this dispute cannot be resolved, Plaintiffs may contact the Court to set up a telephone conference. Signed by Magistrate Judge Amos L. Mazzant on 12/19/11. (Mazzant, Amos) (Entered: 12/19/2011) |
| 2/7/2012 (p.557) | 48 | Opposed MOTION to Compel *Compliance with Agreed Docket Control Order* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Text of Proposed Order)(Johnson, Ryan) (Entered: 2/7/2012) |
| 2/8/2012 (p.564) | 49 | RESPONSE to Motion re [48] Opposed MOTION to Compel *Compliance with Agreed Docket Control Order filed by Lewisville ISD*. (Attachments: # (1) Exhibit Ex 1 to Response to Motion to Compel, # (2) Exhibit Ex 2 to Response to Motion to Compel, # (3) Exhibit Ex 3 to Response to Motion to Compel, # (4) Exhibit Ex 4 to Response to Motion to Compel, # (5) Exhibit Ex 5 to Response to Motion to Compel, # (6) Exhibit Ex 6 to Response to Motion to Compel, # (7) Exhibit Ex 7 to Response to Motion to Compel, # (8) Exhibit Ex 8 to Response to Motion to Compel, # (9) Exhibit Ex 9 to Response to Motion to Compel, # (10) Exhibit Ex 10 to Response to Motion to Compel, # (11) Exhibit Ex 11 to Response to Motion to Compel, # (12) Exhibit Ex 12 to Response to Motion to Compel, # (13) Exhibit Ex 13 to Response to Motion to Compel, # (14) Text of Proposed Order Proposed Order)(Brandt, Thomas) (Entered: 2/8/2012) |
| 2/8/2012 (p.591) | 50 | Supplemental MOTION to Compel *Compliance With Agreed Docket Control Order* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Johnson, Ryan) (Additional attachment(s) added on 2/9/2012: # (1) Text of Proposed Order) (baf, ). (Entered: 2/8/2012) |
| 2/8/2012 (p.596) | 51 | RESPONSE to Motion re [48] Opposed MOTION to Compel *Compliance with Agreed Docket Control Order Supplemental filed by Lewisville ISD*. (Attachments: # (1) Exhibit, # (2) Exhibit)(Brandt, Thomas) (Entered: 2/8/2012) |

| | | |
|---|---|---|
| 2/8/2012 (p.602) | 52 | ORDER DENYING [48] Motion to Compel. Signed by Magistrate Judge Amos L. Mazzant on 2/8/2012. (baf, ) (Entered: 2/8/2012) |
| 2/16/2012 (p.603) | 53 | NOTICE of Discovery Disclosure by Lewisville ISD *and Designation of Expert Witnesses* (Brandt, Thomas) (Entered: 2/16/2012) |
| 2/16/2012 (p.605) | 54 | NOTICE of Discovery Disclosure by Deborah Lance, Jason Lance, The Estate of Montana Lance (Johnson, Ryan) (Entered: 2/16/2012) |
| 2/17/2012 (p.608) | 55 | Joint MOTION for Extension of Time to Amend [44] Scheduling Order, Terminate Motions,,,, - *for Extension of Mediation Deadline* by Deborah Lance, Jason Lance, Lewisville ISD, The Estate of Montana Lance. (Attachments: # (1) Text of Proposed Order)(Skinner, Joshua) (Entered: 2/17/2012) |
| 2/21/2012 (p.613) | 56 | ORDER GRANTING [55] Joint MOTION for Extension of Time to Amend [44] Scheduling Order, Terminate Motions, - *for Extension of Mediation Deadline*Joint MOTION for Extension of Time to Amend [44] Scheduling Order, Terminate Motions, - *for Extension of Mediation Deadline* filed by The Estate of Montana Lance, Deborah Lance, Jason Lance, Lewisville ISD. Mediation Completion due by 3/30/2012. Mary Burdin is the agreed on mediator. Signed by Magistrate Judge Amos L. Mazzant on 2/21/2012. (baf, ) (Entered: 2/21/2012) |
| 2/21/2012 | | Mediation packet, mediation letter, and docket sheet mailed to mediator. Mediation Report deadline set for 3/22/2012 (baf, ) (Entered: 2/21/2012) |
| 3/9/2012 (p.614) | 57 | MOTION for Extension of Time to File *Dispositive Motion and to Conduct Two Depositions* by Lewisville ISD. (Attachments: # (1) Exhibit, # (2) Exhibit, # (3) Exhibit, # (4) Exhibit, # (5) Exhibit, # (6) Exhibit, # (7) Exhibit, # (8) Text of Proposed Order)(Brandt, Thomas) (Entered: 3/9/2012) |
| 3/19/2012 (p.636) | 58 | TRANSFER ORDER. Signed by Judge Michael H. Schneider on 3/14/2012. (baf, ) (Entered: 3/19/2012) |
| 3/19/2012 | | Case REASSIGNED to Judge Ron Clark. Judge Michael H. Schneider no longer assigned to the case. (baf, ) (Entered: 3/19/2012) |
| 3/20/2012 (p.637) | 59 | MOTION to Strike *Defendants' Experts* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Exhibit 3, # (4) Exhibit 4, # (5) Text of Proposed Order)(Wray, Melissa) (Entered: 3/20/2012) |

| 3/21/2012 | | The parties are hereby notified that, due to the transfer of cases to Judge Ron Clark, there is a possibility that the cases previously set for pretrial conference/trial scheduling in July of 2012 may be set for trial before Judge Clark between June18, 2012 - June 29, 2012 (tls, ) (Entered: 3/21/2012) |
| --- | --- | --- |
| 3/21/2012 (p.770) | 60 | MOTION for Summary Judgment by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Exhibit 3, # (4) Exhibit 4, # (5) Exhibit 5, # (6) Exhibit 6, # (7) Text of Proposed Order)(Wray, Melissa) (Entered: 3/21/2012) |
| 3/22/2012 (p.930) | 61 | RESPONSE to Motion re [57] MOTION for Extension of Time to File *Dispositive Motion and to Conduct Two Depositions filed by Deborah Lance, Jason Lance, The Estate of Montana Lance.* (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3)Exhibit 3, # (4) Exhibit 4, # (5) Exhibit 5, # (6) Exhibit 6, # (7) Exhibit 7, # (8) Exhibit 8, # (9) Exhibit 9, # (10) Exhibit 10, # (11) Exhibit 11, # (12) Exhibit 12, # (13) Exhibit 13, # (14) Exhibit 14)(Wray, Melissa) (Entered: 3/22/2012) |
| 3/23/2012 (p.1003) | 62 | ORDER Setting Hearing on Motion [57] MOTION for Extension of Time to File *Dispositive Motion and to Conduct Two Depositions* : Motion Telephonic Hearing set for 3/26/2012 at 10:00 AM before Magistrate Judge Amos L. Mazzant. Signed by Magistrate Judge Amos L. Mazzant on 3/23/2012. (baf, ) (Entered: 3/23/2012) |
| 3/23/2012 (p.1004) | 63 | AMENDED SCHEDULING ORDER: Final Pretrial Conference set for 6/13/2012 at 9:00 AM via video before Judge Ron Clark. Joint Proposed Jury instructions and Verdict Form due by 5/30/2012. Jury Selection and Trial set for 6/18/2012 at 9:00 AM in Ctrm A01 (Sherman - Annex) before Judge Ron Clark. Joint Final Pretrial Order due by 5/23/2012. Signed by Magistrate Judge Amos L. Mazzant on 3/23/2012. (baf, ) (Entered: 3/23/2012) |
| 3/23/2012 | | Set/Reset Scheduling Order Deadlines: Proposed Jury instructions/Form of Verdict due by 5/30/2012, Joint Final Pretrial Order due by 5/23/2012., Set/Reset Trial Management Order Deadlines: Jury Selection and Jury Trial set for 6/18/2012 at 09:00 AM in Ctrm A01 (Sherman - Annex) before Judge Ron Clark. (baf, ) (Entered: 3/23/2012) |
| 3/23/2012 (p.1007) | 64 | ORDER - It is ORDERED that by 4/20/2012, at 4:00 p.m., the parties shall each submit to the Court an estimate of the time that party needs to complete the presentation of testimony in this case. Signed by Judge Ron Clark on 3/23/2012. (baf, ) (Entered: 3/23/2012) |
| 3/26/2012 | | Minute Entry for proceedings held before Magistrate Judge |

| | | |
|---|---|---|
| | | Amos L. Mazzant: Telephonic Hearing held on 3/26/2012 re [57] MOTION for Extension of Time to File *Dispositive Motion and to Conduct Two Depositions* filed by Lewisville ISD. (tls, ) (Entered: 3/26/2012) |
| 3/26/2012 (p.1009) | 65 | ***DEFICIENT DOCUMENT - ATTORNEY MUST REFILE***<br><br>MOTION to Strike *Exclude Defendants' Experts* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Exhibit 1, # (2) Text of Proposed Order)(Wray, Melissa) Modified on 3/27/2012 (baf, ). (Entered: 3/26/2012) |
| 3/26/2012 (p.1033) | 66 | ORDER GRANTING IN PART AND DENYING IN PART [57] MOTION for Extension of Time to File *Dispositive Motion and to Conduct Two Depositions* filed by Lewisville ISD. Dispositive Motions due by 4/9/2012. Signed by Magistrate Judge Amos L. Mazzant on 3/26/2012. (baf, ) (Entered: 3/26/2012) |
| 3/27/2012 | | NOTICE of Deficiency regarding the MOTION TO EXCLUDE DEFENDANTS' EXPERTS submitted DOCUMENT [65] - NO CERTIFICATE OF CONFERENCE. Correction should be made by ONE BUSINESS DAY (baf, ) (Entered: 3/27/2012) |
| 3/30/2012 (p.1034) | 67 | ***NOTICE OF DOCKET CORRECTION ENTERED - ATTORNEY TO REFILE MOTION TO EXCLUDE DEFENDANT'S EXPERT - NOT JUST A SUPPLEMENTAL CERTIFICATE OF CONFERENCE***<br><br>NOTICE by Deborah Lance, Jason Lance, The Estate of Montana Lance re Notice ofDeficiency *Supplemental Certificate of Conference* (Wray, Melissa) Modified on 4/2/2012 (baf, ). (Entered: 3/30/2012) |
| 4/2/2012 | | ***FILED IN ERROR - NOTICE OF DOCKET CORRECTION ENTERED - ATTORNEY TO REFILE MOTION TO EXCLUDE DEFENDANT'S EXPERTS - NOT JUST A SUPPLEMENTAL CERTIFICATE OF CONFERENCE. Document # 67, SUPPLEMENTAL CERTIFICATE OF CONFERENCE. PLEASE IGNORE.***<br><br>(baf, ) (Entered: 4/2/2012) |
| 4/3/2012 (p.1037) | 68 | MOTION to Strike *Exclude Defendants' Experts* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Exhibit 1, # (2) Text of Proposed Order)(Wray, Melissa) (Entered: 4/3/2012) |

| | | |
|---|---|---|
| 4/6/2012 (p.1062) | 69 | RESPONSE to Motion re [59] MOTION to Strike *Defendants' Experts filed by Lewisville ISD*. (Attachments: # (1) Exhibit Exhibit A to Defendant's Response to Plaintiffs' Motion to Strike Defendant's Experts, # (2) Exhibit Exhibit B to Defendant's Response to Plaintiffs' Motion to Strike Defendant's Experts, # (3) Exhibit Exhibit C to Defendant's Response to Plaintiffs' Motion to Strike Defendant's Experts, # (4) Exhibit Exhibit D to Defendant's Response to Plaintiffs' Motion to Strike Defendant's Experts, # (5) Exhibit Exhibit E to Defendant's Response to Plaintiffs' Motion to Strike Defendant's Experts, # (6) Exhibit Exhibit F to Defendant's Response to Plaintiffs' Motion to Strike Defendant's Experts)(Brandt, Thomas) (Entered: 4/6/2012) |
| 4/9/2012 (p.1109) | 70 | MOTION to Dismiss *Plaintiffs State Law Claims* by Lewisville ISD. (Attachments: # (1) Text of Proposed Order)(Brandt, Thomas) (Entered: 4/9/2012) |
| 4/9/2012 (p.1116) | 71 | MOTION to Dismiss *Section 1983 Claims* by Lewisville ISD. (Attachments: # (1) Exhibit, # (2) Text of Proposed Order)(Brandt, Thomas) (Entered: 4/9/2012) |
| 4/9/2012 (p.1206) | 72 | ***DEFICIENT DOCUMENT - ATTORNEY TO REFILE*** <br><br> MOTION to Strike *Designated Expert - Freeman* by Lewisville ISD. (Attachments: # (1) Exhibit, # (2) Exhibit, # (3) Text of Proposed Order)(Brandt, Thomas) Modified on 4/10/2012 (baf, ). (Entered: 4/9/2012) |
| 4/9/2012 (p.1260) | 73 | ***DEFICIENT DOCUMENT - ATTORNEY TO REFILE*** <br><br> MOTION to Strike *Designated Expert - Poland* by Lewisville ISD. (Attachments: # (1) Exhibit, # (2) Exhibit, # (3) Exhibit, # (4) Text of Proposed Order)(Brandt, Thomas) Modified on 4/10/2012 (baf, ). (Entered: 4/9/2012) |
| 4/9/2012 (p.1322) | 74 | MOTION to Strike *Designated Expert - DiMaio* by Lewisville ISD. (Attachments: # (1) Exhibit, # (2) Exhibit, # (3) Exhibit, # (4) Exhibit, # (5) Exhibit, # (6) Exhibit, # (7) Exhibit, # (8) Text of Proposed Order)(Brandt, Thomas) (Entered: 4/9/2012) |
| 4/9/2012 (p.1446) | 75 | MOTION for Partial Summary Judgment - *Discrimination Claims* by Lewisville ISD. (Attachments: # (1) Exhibit, # (2) Exhibit 1, # (3) Exhibit 2, # (4) Exhibit 3, # (5) Exhibit 4, # (6) Exhibit 5, # (7) Exhibit 6, # (8) Exhibit 7, # (9) Exhibit 8, # (10) Exhibit 9, # (11) Exhibit 10 part 2, # (13) Exhibit 11, # (14) Exhibit 12, # (15) Exhibit 13, # (16) Exhibit 14, # (17) Exhibit 15, # (18) Exhibit 16, # (19) Exhibit 17, # (20) Text of Proposed Order)(Brandt, Thomas) (Entered: 4/9/2012) |

| | | |
|---|---|---|
| 4/9/2012 (p.1926) | 76 | MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims* by Lewisville ISD. (Attachments: # (1) Exhibit, # (2) Exhibit 1, # (3) Exhibit 2, # (4) Exhibit 3, # (5) Exhibit 4, # (6) Exhibit 5, # (7) Exhibit 6, # (8) Exhibit 7, # (9) Exhibit 8, # (10) Exhibit 9, # (11) Exhibit 10, # (12) Exhibit 10 part 2, # (13) Exhibit 11, # (14) Exhibit 12, # (15) Exhibit 13, # (16) Exhibit 14, # (17) Exhibit 15, # (18) Exhibit 16, # (19) Exhibit 17, # (20) Text of Proposed Order)(Brandt, Thomas) (Entered: 4/9/2012) |
| 4/10/2012 | | NOTICE of Deficiency regarding the MOTION TO STRIKE submitted DOCUMNET [72] - DOCUMENT EXCEEDS PAGE LIMIT. Correction should be made by ONE BUSINESS DAY (baf, ) (Entered: 4/10/2012) |
| 4/10/2012 | | NOTICE of Deficiency regarding the MOTION TO STRIKE submitted DOCUMENT [73] - DOCUMENT EXCEEDS PAGE LIMIT. Correction should be made by ONE BUSINESS DAY (baf, ) (Entered: 4/10/2012) |
| 4/10/2012 (p.2406) | 77 | MOTION to Strike by Lewisville ISD. (Attachments: # (1) Exhibit Exhibit 1, # (2) Exhibit Exhibit 2)(Brandt, Thomas) (Additional attachment(s) added on 4/11/2012: # (3) Text of Proposed Order) (baf, ). (Entered: 4/10/2012) |
| 4/10/2012 (p.2457) | 78 | MOTION to Strike *the Testimony of Plaintiffs' Expert Scott Poland* by Lewisville ISD. (Attachments: # (1) Exhibit Exhibit 1, # (2) Exhibit Exhibit 2, # (3) Exhibit Exhibit 3, # (4) Text of Proposed Order Proposed Order)(Brandt, Thomas) (Entered: 4/10/2012) |
| 4/12/2012 (p.2517) | 79 | ORDER - Defendant shall file a Response no later than 4/16/2012, at 5:00 pm to [60] MOTION for Summary Judgment filed by The Estate of Montana Lance, Deborah Lance, Jason Lance. Signed by Magistrate Judge Amos L. Mazzant on 4/12/2012. (baf, ) (Entered: 4/12/2012) |
| 4/12/2012 (p.2518) | 80 | RESPONSE in Opposition re [60] MOTION for Summary Judgment *filed by Lewisville ISD.* (Attachments: # (1) Exhibit, # (2) Exhibit 1, # (3) Exhibit 2, # (4) Exhibit 3, # (5) Exhibit 4, # (6) Exhibit 5, # (7) Exhibit 6, # (8) Exhibit 7, # (9) Exhibit 8, # (10) Exhibit 9, # (11) Exhibit 10, # (12) Exhibit Part 2, # (13) Exhibit 11, # (14) Exhibit 12, # (15) Exhibit 13, # (16) Exhibit 14, # (17) Exhibit 15, # (18) Exhibit 16, # (19) Exhibit 17, # (20) Text of Proposed Order)(Brandt, Thomas) (Entered: 4/12/2012) |
| 4/13/2012 | | ORDER denying [59] Motion to Strike. Signed by Magistrate Judge Amos L. Mazzant on 4/13/12. (Mazzant, Amos) (Entered: 4/13/2012) |

| | | |
|---|---|---|
| 4/16/2012 (p.2981) | 81 | REPORT of Mediation by Mary M Burdin. Mediation result: IMPASSE(baf, ) (Entered: 4/17/2012) |
| 4/19/2012 (p.2983) | 82 | RESPONSE to Motion re [68] MOTION to Strike *Exclude Defendants' Experts filed by Lewisville ISD*. (Attachments: # (1) Exhibit Exhibit 1, # (2) Exhibit Exhibit 2, # (3) Exhibit Exhibit 3, # (4) Exhibit Exhibit 4, # (5) Exhibit Exhibit 5, # (6) Text of Proposed Order Proposed Order)(Brandt, Thomas) (Entered: 4/19/2012) |
| 4/23/2012 (p.3032) | 83 | REPLY to Response to Motion re [60] MOTION for Summary Judgment *filed by Deborah Lance, Jason Lance, The Estate of Montana Lance*. (Wray, Melissa) (Entered: 4/23/2012) |
| 4/25/2012 (p.3038) | 84 | Unopposed MOTION for Extension of Time to File Response/Reply as to [76] MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims*, [71] MOTION to Dismiss *Section 1983 Claims*, [77] MOTION to Strike, [78] MOTION toStrike *the Testimony of Plaintiffs' Expert Scott Poland*, [74] MOTION to Strike *Designated Expert - DiMaio*, [70] MOTION to Dismiss *Plaintiffs State Law Claims*, [75] MOTION for Partial Summary Judgment - *Discrimination Claims* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Text of Proposed Order)(Wray, Melissa) (Entered: 4/25/2012) |
| 4/25/2012 (p.3043) | 85 | Amended MOTION for Extension of Time to File Response/Reply as to [84] Unopposed MOTION for Extension of Time to File Response/Reply as to [76] MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims*, [71] MOTION to Dismiss *Section 1983 Claims*, [77] MOTION to Strike, [78] MOTION to StrUnopposed MOTION for Extension of Time to File Response/Reply as to [76] MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims*, [71] MOTION toDismiss *Section 1983 Claims*, [77] MOTION to Strike, [78] MOTION to StrUnopposed MOTION for Extension of Time to File Response/Reply as to [76] MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims*, [71] MOTIONto Dismiss *Section 1983 Claims*, [77] MOTION to Strike, [78] MOTION to Str by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Text of Proposed Order)(Wray, Melissa) (Entered: 4/25/2012) |
| 4/26/2012 (p.3048) | 86 | RESPONSE to Motion re [70] MOTION to Dismiss *Plaintiffs State Law Claims filed by Deborah Lance, Jason Lance, The Estate of Montana Lance*. (Wray, Melissa) (Entered: 4/26/2012) |
| 4/26/2012 (p.3052) | 87 | ***NOTICE OF DOCKET CORRECTION ENTERED - FILED IN ERROR BY CLERK - PLEASE DISREGARD*** |

| | | |
|---|---|---|
| | | ORDER GRANTING [85] Motion for Extension of Time to File Response/Reply re [78] MOTION to Strike *the Testimony of Plaintiffs' Expert Scott Poland*, [70] MOTION to Dismiss *Plaintiffs State Law Claims*, [77] MOTION to Strike, [74] MOTION to Strike *Designated Expert - DiMaio*, [75] MOTION for Partial Summary Judgment - *Discrimination Claims*, [71] MOTION to Dismiss *Section 1983 Claims*, [76] MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims*. Responses due by 4/26/2012. Signed by Magistrate Judge Amos L. Mazzant on 4/26/2012. (baf, ) Modified on 4/26/2012 (baf, ). (Entered: 4/26/2012) |
| 4/26/2012 (p.3053) | 88 | RESPONSE in Opposition re [74] MOTION to Strike *Designated Expert - DiMaio filed by Deborah Lance, Jason Lance, The Estate of Montana Lance*. (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Exhibit 3, # (4) Text of Proposed Order)(Squires, Roderick) (Entered: 4/26/2012) |
| 4/26/2012 | | ***FILED IN ERROR. Document # 87, ORDER. PLEASE IGNORE.***<br><br>(baf, ) (Entered: 4/26/2012) |
| 4/26/2012 (p.3103) | 89 | ORDER GRANTING [84] Motion for Extension of Time to File Response/Reply re [78] MOTION to Strike *the Testimony of Plaintiffs' Expert Scott Poland*, [70] MOTION to Dismiss *Plaintiffs State Law Claims*, [77] MOTION to Strike, [74] MOTION to Strike *Designated Expert - DiMaio*, [75] MOTION for Partial Summary Judgment - *Discrimination Claims*, [71] MOTION to Dismiss *Section 1983 Claims*, [76] MOTION for Partial Summary Judgment - *Special Relationship and StateLaw Claims*. Responses due by 4/26/2012. Signed by Magistrate Judge Amos L. Mazzant on 4/26/2012. (baf, ) (Entered: 4/26/2012) |
| 4/26/2012 (p.3104) | 90 | ORDER GRANTING IN PART [85] Motion for Extension of Time to File Response/Reply re [78] MOTION to Strike *the Testimony of Plaintiffs' Expert Scott Poland*, [70] MOTION to Dismiss *Plaintiffs State Law Claims*, [77] MOTION to Strike, [74] MOTION to Strike *Designated Expert - DiMaio*, [71] MOTION to Dismiss *Section 1983 Claims*, [76] MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims*. Responses due by 4/26/2012. Replies due by 4/30/2012. Signed by Magistrate Judge Amos L. Mazzant on 4/26/2012. (baf, ) (Entered: 4/26/2012) |
| 4/26/2012 (p.3105) | 91 | RESPONSE in Opposition re [71] MOTION to Dismiss *Section 1983 Claims filed by Deborah Lance, Jason Lance, The Estate of Montana Lance*. (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Text of Proposed Order)(Wray, Melissa) (Entered: 4/26/2012) |

| 4/26/2012 (p.3239) | 92 | RESPONSE in Opposition re [78] MOTION to Strike *the Testimony of Plaintiffs' Expert Scott Poland filed by Deborah Lance, Jason Lance, The Estate of Montana Lance.* (Attachments: # (1) Appendix, # (2) Exhibit 1, # (3) Exhibit 2, #(4) Exhibit 3, # (5) Exhibit 4, # (6) Exhibit 5, # (7) Exhibit 6, # (8) Exhibit 7, # (9) Exhibit 8, # (10) Exhibit 9, # (11) Exhibit 10, # (12) Exhibit 11, # (13) Exhibit 12, # (14) Exhibit 13, # (15) Exhibit 14, # (16) Exhibit 15, # (17) Exhibit 16, # (18) Exhibit 17, # (19) Exhibit 18, # (20) Exhibit 19, # (21) Exhibit 20, # (22) Exhibit 21, # (23) Exhibit 22, # (24) Exhibit 23, # (25) Exhibit 24, # (26) Exhibit 25, # (27) Exhibit 26, # (28) Exhibit 27, # (29) Exhibit 28, # (30) Exhibit 29, #(31) Exhibit 30, # (32) Text of Proposed Order)(Squires, Roderick) (Entered: 4/26/2012) |
| 4/26/2012 (p.3543) | 93 | RESPONSE in Opposition re [77] MOTION to Strike *filed by Deborah Lance, Jason Lance, The Estate of Montana Lance.* (Attachments: # (1) Appendix, # (2) Exhibit 1, # (3) Exhibit 2, # (4) Exhibit 3, # (5) Exhibit 4, # (6) Exhibit 5, # (7) Exhibit 6, # (8) Exhibit 7, # (9) Exhibit 8, # (10) Exhibit 9, # (11) Exhibit 10, # (12) Exhibit 11, # (13) Exhibit 12, # (14) Exhibit 13, # (15) Exhibit 14, # (16) Exhibit 15, # (17) Exhibit 16, # (18) Exhibit 17, # (19) Exhibit 18, # (20) Exhibit 19, # (21) Exhibit 20, # (22) Exhibit 21, # (23) Exhibit 22, # (24) Exhibit 23, # (25) Exhibit 24, # (26) Exhibit 25, # (27) Exhibit 26, # (28) Exhibit 27, # (29) Exhibit 28, # (30) Exhibit 29, # (31) Exhibit 30, # (32) Text of Proposed Order)(Squires, Roderick) (Entered: 4/26/2012) |
| 4/26/2012 (p.3849) | 94 | RESPONSE in Opposition re [76] MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims,* [75] MOTION for Partial Summary Judgment - *Discrimination Claims filed by Deborah Lance, Jason Lance, The Estate of Montana Lance.* (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Exhibit 3, # (4) Exhibit 4, # (5) Exhibit 5, # (6) Exhibit 6, # (7) Exhibit 7, # (8) Exhibit 8, # (9) Exhibit 9, # (10) Exhibit 10, # (11) Exhibit 11, # (12) Exhibit 12, # (13) Exhibit 13, # (14) Exhibit 14, # (15) Exhibit 15, # (16) Exhibit 16, # (17) Exhibit 17, # (18) Exhibit 18, # (19) Exhibit 19, # (20) Exhibit 20, # (21) Exhibit 21, # (22) Exhibit 22, # (23) Exhibit 23, # (24) Exhibit 24, # (25) Exhibit 25, # (26) Exhibit 26, # (27) Exhibit 27, # (28) Exhibit 28, # (29) Exhibit 29, # (30) Exhibit 30, # (31) Exhibit 31, # (32) Exhibit 32, # (33) Exhibit 33, # (34) Exhibit 34, # (35) Exhibit 35, # (36) Exhibit 36, # (37) Exhibit 37, # (38) Exhibit 38, # (39) Exhibit39, # (40) Exhibit 40, # (41) Exhibit 41, # (42) Exhibit 42, # (43) Exhibit 43, # (44) Exhibit 44, # (45) Exhibit 45, # (46) Exhibit 46, # (47) Exhibit 47, # (48) Exhibit 48, # (49) Exhibit 49, # (50) Exhibit 50, # (51) Exhibit 51, # (52) Exhibit 52, # (53) Exhibit 53, # (54) Exhibit 54, # (55) Exhibit 55, # (56) Exhibit 56, # (57) Exhibit 57, # (58) Text of Proposed Order)(Wray, Melissa) (Entered: 4/26/2012) |

| | | |
|---|---|---|
| 4/30/2012 (p.4448) | 95 | ORDER RE:PRESENTING WITNESSES. Signed by Judge Ron Clark on 4/30/2012. (pad, ) (Entered: 4/30/2012) |
| 4/30/2012 (p.4450) | 96 | RESPONSE to Motion re [76] MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims*, [75] MOTION for Partial Summary Judgment - *Discrimination Claims - Response to Plaintiffs' Objections filed by Lewisville ISD*. (Attachments: # (1) Text of Proposed Order)(Brandt, Thomas) (Entered: 4/30/2012) |
| 4/30/2012 (p.4460) | 97 | ***PLEASE DISREGARD - ATTORNEY FILED IN ERROR - ATTORNEY TO REFILE***<br><br>MOTION to Strike [94] Response in Opposition to Motion,,,,, - *to Strike Plaintiffs' Summary Judgment Evidence* by Lewisville ISD. (Attachments: # (1) Text of Proposed Order)(Brandt, Thomas) Modified on 5/1/2012 (baf, ). (Entered: 4/30/2012) |
| 4/30/2012 (p.4467) | 98 | MOTION to Strike [94] Response in Opposition to Motion,,,,, - *Plaintiffs' Summary Judgment Evidence* by Lewisville ISD. (Attachments: # (1) Exhibit, # (2) Exhibit, # (3) Text of Proposed Order)(Brandt, Thomas) (Entered: 4/30/2012) |
| 4/30/2012 (p.4493) | 99 | REPLY to Response to Motion re [71] MOTION to Dismiss *Section 1983 Claims filed by Lewisville ISD*. (Brandt, Thomas) (Entered: 4/30/2012) |
| 4/30/2012 (p.4501) | 100 | REPLY to Response to Motion re [76] MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims filed by Lewisville ISD*. (Brandt, Thomas) (Entered: 4/30/2012) |
| 4/30/2012 (p.4511) | 101 | REPLY to Response to Motion re [74] MOTION to Strike *Designated Expert - DiMaio filed by Lewisville ISD*. (Brandt, Thomas) (Entered: 4/30/2012) |
| 4/30/2012 (p.4517) | 102 | ***DEFICIENT DOCUMENT - ATTORNEY TO REFILE***<br><br>REPLY to Response to Motion re [77] MOTION to Strike *filed by Lewisville ISD*. (Brandt, Thomas) Modified on 5/1/2012 (baf, ). (Entered: 4/30/2012) |
| 4/30/2012 (p.4524) | 103 | REPLY to Response to Motion re [78] MOTION to Strike *the Testimony of Plaintiffs' Expert Scott Poland filed by Lewisville ISD*. (Brandt, Thomas) (Entered: 4/30/2012) |
| 4/30/2012 (p.4530) | 104 | REPLY to Response to Motion re [75] MOTION for Partial Summary Judgment - *Discrimination Claims filed by Lewisville ISD*. (Brandt, Thomas) (Entered: 4/30/2012) |

| 5/1/2012 | | ***FILED IN ERROR - ATTORNEY TO REFILE. Document # 97, MOTION TO STRIKE. PLEASE IGNORE.*** (baf, ) (Entered: 5/1/2012) |
|---|---|---|
| 5/1/2012 | | NOTICE of Deficiency regarding the REPLY TO RESPONSE submitted DOCUMENT [102] - DOCUMENT EXCEEDS THE PAGE LIMITS. Correction should be made by ONE BUSINESS DAY (baf, ) (Entered: 5/1/2012) |
| 5/1/2012 (p.4541) | 105 | REPLY to Response to Motion re [77] MOTION to Strike *Plaintiffs' Expert Michael Freeman filed by Lewisville ISD.* (Brandt, Thomas) (Entered: 5/1/2012) |
| 5/4/2012 (p.4547) | 106 | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE re [70] MOTION to Dismiss *Plaintiffs State Law Claims* filed by Lewisville ISD. Signed by Magistrate Judge Amos L. Mazzant on 5/4/2012. (baf, ) (Entered: 5/4/2012) |
| 5/7/2012 (p.4551) | 107 | SUR-REPLY to Reply to Response to Motion re [76] MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims*, [75] MOTION for Partial Summary Judgment - *Discrimination Claims filed by Deborah Lance, Jason Lance, The Estate of Montana Lance.* (Wray, Melissa) (Entered: 5/7/2012) |
| 5/8/2012 (p.4559) | 109 | ORDER that Defendant shall file a response to Plaintiffs' Emergency Motion for Sanctions Against the District for Threatening or Intimidating a Material Witness (Dkt. #108) no later than 5:00 p.m. on May 10, 2012. Signed by Magistrate Judge Amos L. Mazzant on 5/8/12. (tls, ) (Entered: 5/8/2012) |
| 5/8/2012 (p.4560) | 110 | RESPONSE to Motion re [108] Emergency MOTION for Sanctions *filed by Lewisville ISD.* (Attachments: # (1) Text of Proposed Order)(Brandt, Thomas) (Entered: 5/8/2012) |
| 5/8/2012 (p.4567) | 111 | MOTION for Leave to File *Supplement to Daubert Motion to Strike Poland* by Lewisville ISD. (Attachments: # (1) Text of Proposed Order, # (2) Exhibit Supplement, # (3) Exhibit Exh. 1 to Supplement, # (4) Exhibit Exh. 2 to Supplement, # (5) Exhibit Exh. 3 to Supplement, # (6) Exhibit Exh. 4 to Supplement, # (7) Exhibit Exh. 5 to Supplement, # (8) Exhibit Exh. 6 to Supplement)(Brandt, Thomas) (Entered: 5/8/2012) |
| 5/9/2012 (p.4687) | 112 | SUR-REPLY to Reply to Response to Motion re [71] MOTION to Dismiss *Section 1983 Claims filed by Deborah Lance, Jason Lance, The Estate of Montana Lance.* (Wray, Melissa) (Entered: 5/9/2012) |

| 5/9/2012 (p.4692) | 113 | ORDER denying [111] Motion for Leave to File. Signed by Magistrate Judge Amos L. Mazzant on 5/9/12. (tls, ) (Entered: 5/9/2012) |
|---|---|---|
| 5/9/2012 (p.4693) | 114 | NOTICE by Lewisville ISD *of Intent to Offer Certified Records* (Brandt, Thomas) (Entered: 5/9/2012) |
| 5/9/2012 (p.4696) | 115 | REPLY to Response to Motion re [108] Emergency MOTION for Sanctions *filed by Deborah Lance, Jason Lance, The Estate of Montana Lance.* (Wray, Melissa) (Entered: 5/9/2012) |
| 5/9/2012 (p.4702) | 116 | NOTICE by Deborah Lance, Jason Lance, The Estate of Montana Lance *to Offer Certified Records* (Wray, Melissa) (Entered: 5/9/2012) |
| 5/10/2012 (p.4705) | 117 | Supplemental MOTION for Sanctions by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Exhibit)(Wray, Melissa) (Additional attachment(s) added on 5/11/2012: # (2) Text of Proposed Order) (baf, ). (Entered: 5/10/2012) |
| 5/10/2012 (p.4714) | 118 | ORDER re [108] Emergency MOTION for Sanctions filed by The Estate of Montana Lance, Deborah Lance, Jason Lance. Signed by Magistrate Judge Amos L. Mazzant on 5/9/2012. (baf, ) (Entered: 5/10/2012) |
| 5/10/2012 (p.4715) | 119 | MOTION to Seal by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Text of Proposed Order)(Squires, Roderick) (Entered: 5/10/2012) |
| 5/10/2012 (p.4719) | 120 | RESPONSE to Motion re [98] MOTION to Strike [94] Response in Opposition to Motion,,,,, - *Plaintiffs' Summary Judgment Evidence filed by Deborah Lance, Jason Lance, The Estate of Montana Lance.* (Attachments: # (1) Exhibit 1, # (2) Exhibit 1, # (3) Exhibit 3, # (4) Exhibit 4)(Wray, Melissa) (Entered: 5/10/2012) |
| 5/11/2012 (p.4743) | 121 | MEMORANDUM OPINION AND ORDER - DENYING [68] Plaintiffs' Motion to Exclude Defendant's Experts, DENYING [74] Defendant's Daubert Motion to Strike the Testimony of Plaintiffs' Expert Vincent DiMaio, DENYING AS MOOT [77] Defendant's Daubert Motion to Strike the Testimony of Plaintiffs' Expert Michael Freeman, GRANTING IN PART AND DENYING IN PART [78] Defendant's Daubert Motion to Strike the Testimony of Plaintiff's Expert Scott Poland. Signed by Magistrate Judge Amos L. Mazzant on 5/11/2012. (baf, ) (Entered: 5/11/2012) |
| 5/11/2012 (p.4758) | 122 | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE re [76] MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims filed by* |

| | | |
|---|---|---|
| | | Lewisville ISD, [98] MOTION to Strike [94] Response in Opposition to Motion, - *Plaintiffs' Summary Judgment Evidence* filed by Lewisville ISD, [60] MOTION for Summary Judgment filed by The Estate of Montana Lance, Deborah Lance, Jason Lance, [71] MOTION to Dismiss *Section 1983 Claims* filed by Lewisville ISD, [75] MOTION for Partial Summary Judgment - *Discrimination Claims* filed by Lewisville ISD. Signed by Magistrate Judge Amos L. Mazzant on 5/11/2012. (baf, ) (Entered: 5/11/2012) |
| 5/14/2012 (p.4773) | 123 | Emergency MOTION to Continue *Joint Motion for a Continuance of Trial and All Remaining Pretrial Deadlines* by Lewisville ISD. (Attachments: # (1) Text of Proposed Order)(Brandt, Thomas) (Entered: 5/14/2012) |
| 5/16/2012 (p.4778) | 124 | AMENDED SCHEDULING ORDER: GRANTING IN PART AND DENYING IN PART [123] Emergency MOTION to Continue *Joint Motion for a Continuance of Trial and All Remaining Pretrial Deadlines* filed by Lewisville ISD. Proposed Jury instructions/Form of Verdict due by 6/8/2012. Joint Final Pretrial Order due by 6/1/2012. Video Deposition Designation due 6/1/2012. Motions in Limine due 6/1/2012. Responses to Motions in Limine due 6/8/2012. Signed by Magistrate Judge Amos L. Mazzant on 5/16/2012. (baf,) (Entered: 5/16/2012) |
| 5/23/2012 (p.4780) | 125 | RESPONSE to [113] Order on Motion for Leave to File *Supplement to its Daubert Motion to Strike the Testimony of Plaintiffs' Expert Scott Poland* by Lewisville ISD. (Brandt, Thomas) (Entered: 5/23/2012) |
| 5/24/2012 (p.4786) | 126 | RESPONSE to [121] Memorandum & Opinion,, *Lewisville ISD's Objection to the Order Denying Its Daubert Motions to Strike the Testimony of Plaintiffs' Experts Freeman and DiMaio, and Partially Denying Its Daubert Motion to Strike the Testimony of Plaintiffs' Expert Poland* by Lewisville ISD. (Brandt, Thomas) (Entered: 5/24/2012) |
| 5/25/2012 (p.4800) | 127 | Unopposed MOTION Requesting An Order Directing the Filing of FERPA Protected Materials by Lewisville ISD. (Attachments: # (1) Exhibit 1, # (2) Text of Proposed Order)(Brandt, Thomas) (Entered: 5/25/2012) |
| 5/25/2012 (p.4810) | 128 | RESPONSE to [122] Report and Recommendations,, *Objections* by Lewisville ISD. (Brandt, Thomas) (Entered: 5/25/2012) |
| 5/25/2012 (p.4818) | 129 | MOTION for Protective Order *and for Continuance of Trial Based on Plaintiffs' Pretrial Publicity* by Lewisville ISD. (Attachments: # (1) Exhibit 1, # (2) Exhibit 2, # (3) Exhibit 3, # (4) Exhibit 4, # (5) Exhibit 5, # (6) Exhibit 6, # (7) Exhibit 7, # |

| | | (8) Exhibit 8, # (9) Exhibit 9, # (10) Text of Proposed Order)(Brandt, Thomas) (Entered: 5/25/2012) |
|---|---|---|
| 5/29/2012 (p.4880) | 130 | OBJECTION to [122] Report and Recommendations *of United States Magistrate Judge* by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Attachments: # (1) Exhibit)(Wray, Melissa) (Entered: 5/29/2012) |
| 5/30/2012 (p.4933) | 131 | ORDER GRANTING [127] Motion Requesting an Order Directing the Filing of FERPA Protected Materials. Signed by Magistrate Judge Amos L. Mazzant on 5/29/2012. (baf, ) (Entered: 5/30/2012) |
| 5/31/2012 (p.4935) | 132 | ORDER CONTINUING TRIAL TO OCTOBER 2012 DOCKET - Docket Call and Final Pretrial Conference set for 10/10/2012 at 9:00 AM by video before Judge Ron Clark. Proposed Jury instructions/Form of Verdict due by 9/26/2012. Video Deposition Designation Due 9/12/2012. Joint Final Pretrial Order due by 9/19/2012. Motions in Limine due 9/19/2012. It is further ORDERED that defendant Lewisville Independent School District's Motion for Protective Order and Continuance of Trial Based on Pre-Trial Publicity [129] is DENIED AS MOOT insofar as it requests a continuance. The portion of the motion requesting a Protective Order remains pending, and will be ruled on by the Magistrate Judge when it becomes ripe. Signed by Judge Ron Clark on 5/31/2012. (baf, ) (Entered: 5/31/2012) |
| 6/6/2012 (p.4938) | 133 | RESPONSE to Motion re [117] Supplemental MOTION for Sanctions, [108] Emergency MOTION for Sanctions *filed by Lewisville ISD*. (Attachments: # (1) Exhibit, # (2) Exhibit, # (3) Exhibit, # (4) Exhibit, # (5) Exhibit, # (6) Exhibit, # (7) Exhibit, # (8) Text of Proposed Order)(Brandt, Thomas) (Entered: 6/6/2012) |
| 6/11/2012 (p.5006) | 134 | RESPONSE to Motion re [129] MOTION for Protective Order *and for Continuance of Trial Based on Plaintiffs' Pretrial Publicity filed by Deborah Lance, Jason Lance, The Estate of Montana Lance*. (Attachments: # (1) Text of Proposed Order)(Wray, Melissa) (Entered: 6/11/2012) |
| 6/15/2012 (p.5017) | 135 | RESPONSE to [130] Objection to Report and Recommendations by Lewisville ISD. (Skinner, Joshua) (Entered: 6/15/2012) |
| 6/21/2012 (p.5050) | 136 | REPLY to Response to Motion re [129] MOTION for Protective Order *and for Continuance of Trial Based on Plaintiffs' Pretrial Publicity filed by Lewisville ISD*. (Valenzuela, Francisco) (Entered: 6/21/2012) |
| | 137 | |

| | | |
|---|---|---|
| 7/6/2012 (p.5059) | | ORDER Setting Hearing on Motions [117] Supplemental MOTION for Sanctions, [108] Emergency MOTION for Sanctions : Motion Hearing set for 7/25/2012 at 9:00 AM in Ctrm A01 (Sherman - Annex) before Magistrate Judge Amos L. Mazzant. Signed by MagistrateJudge Amos L. Mazzant on 7/6/2012. (baf, ) (Entered: 7/6/2012) |
| 7/11/2012 (p.5060) | 138 | ***PLEASE DISREGARD - DOCKETED IN INCORRECT CASE BY CLERK***<br><br>ORDER - It is ORDERED that by 8/24/2012, at 4:00 p.m., the parties shall each submit to the Court an estimate of the time that party needs to complete the presentation of testimony in this case. Signed by Judge Ron Clark on 7/11/2012. (baf, ) Modified on 7/12/2012 (baf, ). (Entered: 7/11/2012) |
| 7/12/2012 | | ***FILED IN ERROR - DOCKETED IN INCORRECT CASE BY CLERK. Document # 138, ORDER. PLEASE IGNORE.***<br><br>(baf, ) (Entered: 7/12/2012) |
| 7/16/2012 (p.5062) | 139 | ORDER - It is ORDERED that by 8/24/2012, at 4:00 p.m., the parties shall each submit to the Court an estimate of time that party needs to complete the presentation of testimony in this case. Signed by Judge Ron Clark on 7/16/2012. (baf, ) (Entered: 7/16/2012) |
| 7/25/2012 (p.5064) | 141 | Minute Entry for proceedings held before Magistrate Judge Amos L. Mazzant: Motion Hearing held on 7/25/2012 re [108] Emergency MOTION for Sanctions filed by The Estate of Montana Lance, Deborah Lance, Jason Lance, [117] Supplemental MOTION for Sanctions filed by The Estate of Montana Lance, Deborah Lance, Jason Lance. The Court heard the evidence will leave hearing open until evidence is completed and argument received. (Court Reporter D. Maxwell.) (dm, ) (Entered: 7/26/2012) |
| 7/26/2012 (p.5067) | 140 | ORDER GRANTING IN PART [119] Motion to Seal. The Clerk's Office is unable to seal a portion of a previously filed document. It is therefore ORDERED that Plaintiffs' Emergency Motion for Sanctions Against the district for threatening or Intimidating a Material Witness (doc [108] ) shall be SEALED in its entirety. Signed by Magistrate Judge Amos L. Mazzant on 7/25/2012. (baf, ) (Entered: 7/26/2012) |
| 8/15/2012 (p.5068) | 142 | ORDER Setting Hearing on Motions [117] Supplemental MOTION for Sanctions, [108] Emergency MOTION for Sanctions : Motion Hearing set for 9/5/2012 at 10:00 AM in Ctrm A01 (Sherman - Annex) before Magistrate Judge Amos L. Mazzant. Signed by MagistrateJudge Amos L. Mazzant on 8/15/2012. (baf, ) (Entered: 8/15/2012) |

| | | |
|---|---|---|
| 8/31/2012 | | NOTICE of Hearing: Final Pretrial Conference RESET for 10/9/2012 09:00 AM in Ctrm 116 (Sherman) before Judge Ron Clark. (fal, ) (Entered: 8/31/2012) |
| 9/5/2012 (p.5069) | 143 | Minute Entry for proceedings held before Magistrate Judge Amos L. Mazzant: Motion Hearing continued on 9/5/2012 re [108] Emergency MOTION for Sanctions filed by The Estate of Montana Lance, Deborah Lance, Jason Lance, [117] Supplemental MOTION for Sanctions filed by The Estate of Montana Lance, Deborah Lance, Jason Lance. (Court Reporter D. Maxwell.) (dm, ) (Entered: 9/5/2012) |
| 9/7/2012 (p.5071) | 144 | Witness List to Motion hearing of 7/25/12 and 9/5/12. (dm, ) (Entered: 9/7/2012) |
| 9/7/2012 (p.5072) | 145 | Exhibit List to Motion hearing of 7/25/12 and 9/5/12. (dm, ) (Entered: 9/7/2012) |
| 9/11/2012 (p.5073) | 146 | ORDER OVERRULING PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION - GRANTING [76] MOTION for Partial Summary Judgment - *Special Relationship and State Law Claims* filed by Lewisville ISD, DENYING AS MOOT [98] MOTION to Strike [94] Response in Opposition to Motion, - *Plaintiffs' Summary Judgment Evidence* filed by Lewisville ISD, DENYING AS MOOT [60] MOTION for Summary Judgment filed by The Estate of Montana Lance, Deborah Lance, Jason Lance, DENYING AS MOOT [71] MOTION to Dismiss *Section 1983 Claims* filed by Lewisville ISD, OVERRULING [130] Objection to Report and Recommendations filed by The Estate of Montana Lance, Deborah Lance, Jason Lance, GRANTING [70] MOTION to Dismiss *Plaintiffs State Law Claims* filed by Lewisville ISD, DENYING AS MOOT [129] MOTION for Protective Order *and for Continuance of Trial Based on Plaintiffs' Pretrial Publicity* filed by Lewisville ISD, GRANTING [75] MOTION for Partial Summary Judgment - *Discrimination Claims* filed by Lewisville ISD. Signed by Judge Ron Clark on 9/11/2012. (baf, ) (Entered: 9/11/2012) |
| 9/11/2012 (p.5083) | 147 | FINAL JUDGMENT. Signed by Judge Ron Clark on 9/11/2012. (baf, ) (Entered: 9/11/2012) |
| 9/25/2012 (p.5084) | 148 | PROPOSED BILL OF COSTS filed by Lewisville ISD. (Brandt, Thomas) (Entered: 9/25/2012) |
| 9/27/2012 (p.5104) | 149 | BILL OF COSTS by Lewisville ISD. Costs Taxed in the amount of $14,066.52. (baf, ) (Entered: 9/27/2012) |
| 10/4/2012 (p.5124) | 150 | ***DEFICIENT DOCUMENT - ATTORNEY MUST REFILE*** |

USCA5 25

| | | |
|---|---|---|
| | | PROPOSED BILL OF COSTS filed by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Squires, Roderick) Modified on 10/4/2012 (baf, ). (Entered: 10/4/2012) |
| 10/4/2012 | | NOTICE of Deficiency regarding the OBJECTIONS TO PROPOSED BILL OF COSTS submitted DOCUMENT [150] - INCORRECT DOCKET EVENT USED. Correction should be made by ONE BUSINESS DAY (baf, ) (Entered: 10/4/2012) |
| 10/4/2012 (p.5136) | 151 | RESPONSE to [148] Proposed Bill of Costs by Deborah Lance, Jason Lance, The Estate of Montana Lance. (Squires, Roderick) (Entered: 10/4/2012) |
| 10/9/2012 (p.5148) | 152 | NOTICE OF APPEAL as to [147] Judgment, [146] Order,,,, by Deborah Lance, Jason Lance, The Estate of Montana Lance. Filing fee $ 455, receipt number 0540-3818725. (Cirkiel, Martin) (Entered: 10/9/2012) |
| 10/11/2012 (p.5150) | 153 | RESPONSE to [151] Response to Non-Motion *Response to Plaintiff's Objections to Lewisville ISD's Proposed Bill of Costs* by Lewisville ISD. (Brandt, Thomas) (Additional attachment(s) added on 10/12/2012: # (1) EXHIBIT 1 - REVISED BILL OF COSTS) (baf, ). (Entered: 10/11/2012) |
| 10/12/2012 | | USCA Case Number 12-41139 for [152] Notice of Appeal filed by The Estate of Montana Lance, Deborah Lance, Jason Lance. (baf, ) (Entered: 10/15/2012) |
| 11/13/2012 (p.5190) | 155 | TRANSCRIPT ORDER REQUEST (TRANSCRIPT IS UNNECESSARY FOR APPEAL PURPOSES) by The Estate of Montana Lance. (baf, ) (Entered: 11/29/2012) |
| 11/21/2012 (p.5191) | 154 | **\*\*\*PLEASE DISREGARD - ATTORNEY FILED IN ERROR - ATTORNEY TO SEND LETTER TO THE COURT\*\*\***<br><br>NOTICE by The Estate of Montana Lance *Notice of Request for Record of Appeal on Disk* (Cirkiel, Martin) Modified on 11/21/2012 (baf, ). (Entered: 11/21/2012) |

# TAB 2

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF MONTANA LANCE, BY AND THROUGH JASON AND DEBORAH LANCE, INDIVIDUALLY AND UPON BEHALF OF HIS HEIRS,<br><br>     Plaintiffs,<br><br>VS.<br><br>LEWISVILLE INDEPENDENT SCHOOL DISTRICT AND LEA LAND, IN HER INDIVIDUAL CAPACITY,<br><br>     Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:11-CV-00032<br>(Judge Schneider/Judge Mazzant) |

## SECOND AMENDED COMPLAINT

COME NOW Plaintiffs, the Estate of Montana Lance, by and through Jason and Deborah Lance, individually and upon behalf of his heirs (the "Lances"), and file their second amended complaint against Defendants Lewisville Independent School District ("LISD" or the "District") and Stewart's Creek Elementary School ("Stewart's Creek") principal Lea Land ("Principal Land"), in her individual capacity. In support of their second amended complaint, the Lances respectfully show the Court the following:

## NATURE OF THE CASE

1.     Montana Lance ("Montana") was a special needs child, suffering from disabilities that, among other things, made him the target of harassment and bullying by his peers. If he were still alive, Montana would have just begun the sixth grade. Instead, Montana's life ended last year at the age of nine, when he locked himself in a bathroom at Stewart's Creek and hanged himself with his belt while the school nurse and other personnel searched high and low for a key to unlock the door. This was neither the first time Montana had locked himself in the bathroom nor the first time he had made a suicidal gesture. The District and its personnel were well aware of these facts.

1

2.    When Montana's short life came to its tragic end, he was in the custody of LISD and in a position of danger into which the District affirmatively placed him, consciously disregarding and exhibiting deliberate indifference to his health and safety.  LISD and its agents, by and through the District's policies, procedures, practices, and customs, failed to keep Montana safe and ultimately proximately caused his untimely death.

3.    Moreover, LISD failed Montana in that when Montana was alive, the District discriminated against him based on his disability.  Among other things, the District failed to provide Montana a Free Appropriate Public Education ("FAPE") as required by federal laws and regulations.

4.    In this suit, Montana's parents, both individually and on behalf of his estate and heirs, allege that LISD and its agents violated Montana's civil rights, subjecting the District to liability under section 504 of the Rehabilitation Act of 1973, Pub. L. 93-112, as amended ("section 504" or the "Rehabilitation Act" or the "Act"), and 42 U.S.C. § 1983 ("section 1983").

5.    In addition to alleging wrongful acts by the District and its agents in their official capacities, the Lances bring suit under section 1983 against Principal Land in her individual capacity because, she acted with deliberate indifference to Montana's health and safety and in an objectively unreasonable manner to violate his clearly established constitutional rights.

6.    The Lances seek economic damages including medical, psychological and counseling, funeral and burial, educational, and incidental expenses as well as loss of earning capacity; non-economic damages including pain and suffering, mental anguish, loss of services, and loss of consortium; litigation expenses including attorney's fees, expenses, costs of suit, and pre- and post-judgment interest; and punitive damages against Principal Land, in her individual capacity.

2

### PARTIES

7.    Montana's natural parents, who bring suit individually and on behalf of Montana's estate and heirs, are Texas residents.  When alive, Montana was a Texas resident and was, at all pertinent times, a student in LISD.  Montana was a qualified student with disabilities, as defined by the Rehabilitation Act.

8.    LISD is a school district organized under the laws of the state of Texas and at all times required to follow the policies and procedures set forth by its board of trustees (the "School Board"), whose members are elected officials entrusted with the legal responsibility for the education of LISD students.  The School Board, among other things, makes all major decisions regarding school policy and has complete and final control over local school matters, subject to legal and regulatory limitations.  LISD has been served and has appeared through counsel.

9.    Principal Land is a Texas resident.  She has been served and has appeared through counsel.

### JURISDICTION

10.    The Court has jurisdiction over LISD because it is a school district organized under Texas law and over Principal Land because she is a Texas resident.

11.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the suit involves federal questions under section 1983 and the Rehabilitation Act.

### VENUE

12.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1)-(2) because one or more Defendants reside(s) in this judicial district and because a substantial part of the events or omissions giving rise to this suit occurred in this judicial district.

3

## FACTS

### *Who Was Montana Lance?*

13.    Montana was Deborah and Jason Lance's first child.  He was born on March 2, 2000.

14.    Montana had special needs, including emotional disturbance, a learning disability, and a speech impairment.  His diagnoses qualified him for, and he received, special education services pursuant to the Individuals with Disabilities Education Act ("IDEA").  Montana was also a qualified individual with disabilities as defined by the Rehabilitation Act.

15.    Montana's disabilities manifested in the exhibition of unusual behavior that was readily observable by his peers and speaking with a childlike lisp.  Consequently, Montana became the target and victim of bullying.

16.    Despite multiple complaints by Montana and his parents regarding the bullying and harassment Montana endured while in the custody of LISD, the District failed to maintain a safe environment for Montana and consciously disregarded a known risk to Montana's health and safety.

### *The History of Bullying and Harassment in the United States*

17.    In order to lay the foundation for setting forth the Lances' claims against the District and Principal Land, in her individual capacity, it is important to recite an abbreviated history of bullying and harassment in the United States.

18.    The infamous Columbine High School massacre – which will forever be known and remembered as, simply, "Columbine" – occurred on April 20, 1999.  On that day, two students named Eric Harris and Dylan Klebold – known by school officials to have serious emotional disturbances and known by school officials to be victims of bullying and harassment – entered their school and embarked on a horrid shooting spree, killing twelve fellow students and one teacher and injuring twenty-four other students.  The pair then committed suicide.

4

19.    While there is no excuse for the unspeakable acts of these two students, the Columbine tragedy is illustrative of the devastating effects bullying and harassment can have on both the aggrieved students -- who may respond by hurting themselves -- and their classmates and teachers -- who may also fall victim to their resulting rage.

20.    Importantly, the issue of bullying and harassment in schools was a major concern even before Columbine. In fact, just a few months earlier, in January 1999, the Department of Education ("DOE") had produced a guide for schools entitled *Protecting Students from Harassment and Hate Crime* (the "Guide"). The Guide essentially provided schools with a checklist of items that -- if followed and/or implemented -- would help develop a culture in schools that would be both safer and helpful in preventing bullying and harassment. The action items included in the Guide included, without limitation: creation of an anti-harassment program in collaboration with parents, students, and community groups; adoption, distribution, and enforcement of a written anti-harassment policy; development and enforcement of grievance procedures; institution of specific response techniques to be used when harassment occurs, both to stop it and prevent recurrence; appointment of school officials to become familiar with pertinent civil rights laws and laws pertaining to hate crimes; development of procedures for collaborating with law enforcement; training staff to support anti-harassment efforts; documentation and reporting of all incidents of harassment; and regular assessment of the effectiveness of anti-harassment efforts.

21.    Statistical studies have shown for some time that children with disabilities are most likely to be the victims of bullying and harassment. For this reason, the DOE next produced a *Memorandum re: Harassment based on Disability* (the "Memo"). The Memo articulated that intimidating or abusive behavior towards a student with a disability that either a) creates a hostile educational environment for that student; or b) denies him the ability to participate in certain benefits, services, or opportunities at the school to the same extent as non-disabled students would be considered

5

disability discrimination pursuant to section 504. Further, the Memo deemed such behavior a denial of the student's right to a FAPE pursuant to the Act.

22.    The Memo – now almost a decade old – also contained a section called *How to Prevent and Respond to Disability Harassment*. It generally paralleled the items noted in the previously-created and aforementioned Guide, but it strengthened language directing a school district to create "a campus environment that is aware of disability concerns and sensitive to disability harassment". Again, school boards were directed, among other things, to be "weaving these issues [of bullying and harassment based upon disability] into the curriculum or programs outside the classroom." School boards were now instructed to have not only policies, but active programs and ongoing practices in place to address discrimination on the basis of disability, including bullying and harassment based on disability. The Memo contained its own checklist of sorts requiring board members, administrators, and superintendents to publicize anti-harassment statements and response procedures, provide appropriate training for staff and students, provide counseling for bullies and their victims, implement monitoring programs, and assess disability harassment policies and procedures as needed.

23.    Problems with bullying and harassment continued, so the DOE later developed two *Best Practices in Bullying Prevention and Intervention* and the Department of Justice produced *Bullying in Schools*.

24.    All of the aforementioned resources were readily available to school boards and school districts – including LISD – so that they could follow the appropriate policies, programs, and practices in order to curb, prevent, and appropriately respond to bullying, harassment, and disability discrimination.

25.    Over time, the Office Of Civil Rights ("OCR") within the DOE issued numerous opinions on the issues of bullying, harassment, and disability discrimination, further giving school boards and school districts direction on how to deal with this ongoing threat to not only the safety

6

of children but to the quality of their education. The OCR delineated a number of action items, warning that failure to implement them could result in a hostile and discriminatory educational environment. Those action items included, without limitation, addressing and instructing students on bullying, assessing bullying, implementing rules and strategies regarding bullying, posting signs about bullying, and encouraging reporting.

26.    With respect to handling incidents once reported, the OCR noted that the failure to take certain actions related to training, investigation, documentation, response, prevention, counseling, notice, and post-investigation monitoring could also rise to the level of disability discrimination.

27.    These guidelines were not merely a federal mandate but were also integrated into Texas law. First, the state's juvenile justice system stiffened penalties for students who bullied and harassed other students. Also, the Texas Education Agency ("TEA") and various local service centers working its purview developed and disseminated a significant amount of support material for school boards on how to best prevent bullying and harassment and, specifically, bullying and harassment based on disability. In addition, school boards were provided information on how to best respond to bullying and harassment when it occurred.

### LISD's Response to Bullying and Harassment

28.    While many school boards across the country and across our own state heard this clarion call and made anti-bullying campaigns integral parts of their practices and customs, unfortunately, many others – such as LISD – only gave it lip service.

29.    Review of LISD policies and procedures reveals that the School Board and the District promulgated policies regarding the general problem of bullying and harassment and the particular problem of bullying and harassment based upon disability.

7

30.    Nevertheless, nothing in Montana's educational records indicates that the District did anything to protect Montana from or respond to the bullying he suffered throughout his time at Stewart's Creek. In fact, the District and its agents affirmatively placed Motnana in danger.

31.    Neither Principal Land nor the School Board responded to Montana's parents' complaints in accordance with government directives.

32.    The District failed to implement even its own policies and procedures regarding bullying and harassment in general and, specifically, of students with disabilities.

33.    LISD failed to adequately train its staff and personnel with regard to policies and procedures regarding bullying, harassment, and disability discrimination.

34.    LISD failed to adequately supervise its staff and personnel as to such policies and procedures.

35.    In sum, rather than promote a school climate that was sensitive to the issues of bullying, harassment, and disability discrimination, the District actually fostered a climate where bullying, harassment, and disability discrimination were rampant. Even worse, when those things occurred, the District did not know how to respond and did not respond.

36.    The District's failure to develop policies and procedures sensitive to bullying and harassment – specifically that of students with disabilities – affected the perception of District officials, staff, and personnel with regard to Montana's situation. When Montana and his parents brought forward complaints that he was a victim of bullying and harassment, District personnel heard but they did not listen, consciously disregarding the risk to Montana's health and safety. Their deliberate indifference led to a tragic result.

8

### *Montana's Story*

37.     As early as the second grade, classmates A.O., J.G., and J.R.B. targeted and bullied Montana.[1] They bullied him in class, at lunch, and on the playground. They called Montana "gay" because of his speech impairment that caused him to lisp. The bullies told other students not to sit with Montana and that if they did, they would be "sitting at the gay table". Recess, which most students look forward to, was the worst time for Montana. To avoid his tormenters on the playground, Montana often asked his teacher if he could stay in the classroom and read rather than go outside and play.

38.     Naturally, Montana began to feel more and more left out of normal social interactions. He became depressed and even suicidal. In the fall of Montana's second-grade year, his mother asked that an Admission, Review, and Dismissal ("ARD") Committee meeting be held to discuss these problems. The school convened a meeting on December 17, 2007, and Montana was consequently referred for a full psychological assessment.

39.     In early February 2008, the school psychologist's noted concerns because Montana had made verbal statements about hurting himself. The psychologist found Montana to be "at risk" and deemed his behavior "clinically significant". In his own self-reporting, Montana -- who was only seven years old at the time -- wrote that he felt like life was getting worse and worse, that the other kids hated him, that his classmates made fun of him, that he heard voices in his head, and that he hated himself. When asked to quantify his degree of relation to the statements, "I want to die" or "I wish I were dead", Montana answered "Almost Always".

40.     The psychologist noted that Montana he satisfied the criteria for a child with an emotional disturbance and could receive services from the school in concert with this diagnostic designation. Nevertheless, this designation was not formally accepted by District personnel until

---

[1] The Lances refer to minor students by their initials but will provide those students' full names to Defendants upon request.

9

November 2009, almost twenty-one months later and approximately two months before Montana died.

41.    The psychologist also found that Montana satisfied the diagnostic criteria for autism and Asperger's syndrome. These designations and diagnoses were never reviewed or formally assessed by any District personnel.

42.    Neither the psychologist, the school counselor, Principal Land, nor any other school or District personnel provided Montana's parents with a copy of the school psychologist's report or gave them an opportunity to review it. No District personnel discussed the psychologist's findings with the Lances.

43.    In any case, as required by the IDEA, an ARD Committee was convened on Montana's behalf to deal with this report. The ARD Committee developed an Individualized Education Plan ("IEP") for Montana that required, among other things, that he receive four twenty-minute sessions of counseling over a six- week period in order to deal with his social interactions at school.

44.    Nothing in the IEP that the ARD Committee created for Montana based on the school psychologist's assessment of him addresses Montana's self-destructive thoughts and feelings. Nothing in the IEP provides for any training for his teacher to recognize signs of depression and suicidality. Nothing in the IEP provides for communication between the counselor and the Lances to address issues at school and at home. In short, the IEP is grossly inadequate in light of the serious findings contained in the report upon which it was purportedly based.

45.    Though the plan was ultimately ignored and never implemented, the ARD Committee also attempted to develop a Behavioral Intervention Plan ("BIP") to address Montana's emotional disturbances in the classroom setting. The BIP provided for a number of "Positive Intervention Strategies and Consequences". There is no evidence in Montana's educational records

10

to suggest that the school ever used any of the strategies or consequences with him or implemented the BIP in any manner.

46.    Montana's mother complained to school officials about bullying and harassment numerous times during Montana's third-grade year. No action was taken.

47.    Likewise, Montana's mother complained to school officials at least four times during the first half of Montana's fourth-grade year. Several serious incidents and instances of deliberate indifference on the school's part occurred during that fall semester of that year that set the stage for the tragic events of January 21, 2010.

48.    First, on November 4, 2009, another student "verbally provoked" Montana and "pushed him down on the ground", resulting in Montana's almost hitting his head on a stack of chairs. Montana responded by pushing the other student into a stack of chairs. Like previous instances when Montana had attempted to protect himself, Montana was given a "Student Discipline Referral" (a "Referral").

49.    A few weeks later, Montana had problems in class and blurted out that he had "pooped in his pants."

50.    On December 11, 2009, Montana received another Referral after getting into an altercation with three other boys. When speaking to a teacher about the incident, Montana stated that he wanted to be expelled.

51.    There is no evidence in Montana's educational records to suggest that Montana's school counselor discussed any of these incidents with him. There is nothing in the records demonstrating implementation of the BIP in response to these incidents. Montana's parents were never called about any of the three events.

52.    Finally, on December 18, 2009, Montana was once again threatened by a student and told the student that he was a bully and would be a nerd when he grew up. One student told

11

another student to "beat [Montana] up again." Montana became surrounded by a group of kids. In response, he pulled out a small pen knife in hopes of frightening the bullies away. Montana received another Referral and was suspended from school. Again, no counseling was given, nor was the BIP implemented.

53.    Thus, not only did the District and its agents fail to respond to these incidents appropriately or implement the plans in place for dealing with Montana on account of his disabilities, they affirmatively disciplined him for his involvement in the above-described altercations.

54.    Upon Montana's suspension, the District affirmatively placed him in a Disciplinary Alternative Education Program ("DAEP") at the Lewisville Learning Center, stripping him of his ability to protect himself from bullying by other students and instilling in him the notion that the school – an institution he was taught to trust – would not protect him. This affirmative exercise of the school's power further disabled nine-year-old Montana and obligated the school to protect him.

55.    Also, when a child with a disability is referred to a DAEP, federal special education law provides for a hearing to determine whether the triggering behavior was a manifestation of the child's disability, in which case the child will not be placed in a DAEP. LISD never afforded Montana this procedural protection to which he was entitled.

56.    On January 4, 2010, Montana's mother sent a letter to Principal Land in an effort to appeal his placement in the DAEP. The letter explicitly stated that Montana was a victim of bullying and that in the incident leading to his suspension, he had been defending himself against his tormenters.

57.    Principal Land summarily denied the appeal, and no documentation exists of any investigation of the claims of bullying or its relation to Montana's recent behavior.

12

58.     Records reflect that Montana's IEP and BIP were also ignored while he was in the DAEP.

59.     On January 6, 2011, Montana's mother sent a letter to Rocky Brookmole ("Brookmole"), Executive Director of Student Services for LISD, appealing Principal Land's decision. Importantly, the letter made it clear that Montana had no disciplinary problems at the DAEP because he had been free from "hazing and bullying."

60.     Montana's educational records do not document any investigation by Brookmole or anyone else in the District of Montana's mother's concerns that his recent disciplinary problems were tied to his disability or in response to disability discrimination. Had the school followed federal protocol in the first place and afforded Montana the Manifestation Determination Hearing to which he was entitled, this would have been discovered.

61.     On January 11, 2011, Montana's mother appealed Montana's placement in the DAEP to the School Board. She told the School Board that Montana had been a victim of bullying and that he had been attempting to defend himself from the bullies.

62.     Nothing in Montana's educational records reflects that the School Board or anyone in the District investigated these concerns.

63.     In fact, there is nothing in Montana's educational records to suggest that any District personnel ever investigated any of Montana's or his parents' repeated assertions that Montana's recent behavioral acts resulted from defending himself against bullies who were harassing him generally and/or based on his disability.

64.     Significantly, while none-year-old Montana was in the DAEP, he admitted to a high school counselor, Mike Riek ("Riek"), that he was suicidal. The records are bereft of any documentation of what Montana's specific statements were, any assessment of them, any

13

interventions, or any recommendations. There is also no documentation that Montana's suicidal ideations were shared with his school counselor at Stewart's Creek.

65.     Upon his discharge from the DAEP and return to Stewart's Creek, the District again denied Montana a procedural safeguard to which he was entitled pursuant to federal law – an ARD Committee meeting that is required when a student is discharged from a DAEP and sent back to the regular education environment. Such a meeting would have been especially relevant in light of the incident that placed Montana at the DAEP in the first instance, his suicidal threats, and their proximity to his death.

66.     Instead of listening to the Lances' complaints, implementing the policies and procedures required by federal law, following its own policies and procedures, and following the procedures specifically created to ensure that Montana received a FAPE as a student with disabilities, the District was deliberately indifferent to Montana's health and safety and affirmatively placed Montana in a position of danger that ultimately proximately caused his death.

*Montana's Death*

67.     On January 21, 2010, Montana was back in the regular education classroom. Evidently, Montana was bullied and harassed by the very same students who had caused him to be removed from the classroom in the first instance. It is unsurprising that Montana had a behavioral outburst.

68.     Reliably, nothing in Montana's educational records reflect that the BIP was implemented whatsoever or that his IEP – particularly the counseling component – was followed on that fateful day.

69.     Instead, school personnel disciplined Montana, ignored the root cause of his behavior, removed him from the classroom, and placed him in an area secluded from his regular teacher and classmates. In doing so, the District and its agents affirmatively took Montana into their

14

custody and isolated him from the classroom environment. This effectively created an In-School Suspension ("ISS") and limited his freedom to leave. It would seem the clear intent of this placement was to keep Montana more closely supervised.

70.      Nevertheless, when Montana needed to use the bathroom, school personnel sent him to school nurse Terry Lowry's ("Nurse Lowry") office and instructed him to use a bathroom equipped for toileting children with physical disabilities. Montana had previously locked himself in that very bathroom, a fact of which school officials were aware but had never shared with his parents. The equipment in the special needs bathroom included an apparatus sufficient to support Montana's weight.

71.      Upon realizing that Montana had been in the bathroom for an unusually long period of time, Nurse Lowry became concerned and called out to him. Getting no response, Nurse Lowry attempted to open the bathroom door but found that it was locked. But Nurse Lowry did not have a key to open the door to the bathroom specially equipped for children with disabilities that was located in her very office, nor could she readily locate one.

72.      Finally, school personnel found a janitor who had a key to the special needs bathroom, but it was too late. Upon opening the locked bathroom door, school personnel found Montana, with his belt around his neck, hanging from a toileting apparatus -- where he had apparently been suffering while they searched for a key. After Montana's nine-year-old body was taken down from the makeshift noose, efforts to resuscitate him were unsuccessful. He was pronounced dead shortly thereafter.

73.      Montana is survived by his parents and a seven-year-old brother, Dooley.

15

## CAUSES OF ACTION

### Section 504 of the Rehabilitation Act

74.   The Lances incorporate paragraphs 1-73 of this second amended complaint by reference as if they were fully set forth herein.

75.   29 U.S.C. § 794(a) provides that qualified individuals with disabilities may not be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving, or whose operator is receiving federal funds. The statute directs various government agencies to promulgate administrative regulations to carry out the Rehabilitation Act of 1973, as amended. *See id.* The Rehabilitation Act, likewise, is a federal law designed to eliminate disability-based discrimination in any program or activity receiving federal funds. *See generally* Pub. L. 93-112, as amended; 29 U.S.C. § 794(a).

76.   Section 504 of the Rehabilitation Act, in conjunction with the DOE regulations promulgated to effectuate it, pertains to disability discrimination in the elementary education context. *See generally* Pub. L. 93-112, as amended, § 504; 34 C.F.R. § 104.1-10, .31-.39.

77.   The relevant DOE regulations require a recipient of federal funds that operates a public elementary program or activity to provide a FAPE to each qualified handicapped[2] person in its jurisdiction. 34 C.F.R. § 104.33(a). Program or activity is defined to include all operations of a school district receiving federal funds. *See id.* § 104.3(k).

78.   Providing a FAPE entails a) providing the disabled student with education and services designed to meet his needs as adequately as the needs of non-disabled students are met that b) adheres to certain procedural safeguards. *See id.* §§ 104.33-.36. One means of meeting the first part of this standard is implementing an IEP developed in accordance with federal law. *Id.* § 104.33(a)(2).

---

[2] Although the federal laws and regulations use the term "handicapped", the Lances will use the term "disabled", ascribing it the same meaning.

16

79.    Section 504 also mandates that a school must place a disabled student in its regular educational environment unless it is demonstrated that the education of the disabled student with the use of supplementary aids and services cannot be achieved satisfactorily. *Id.* § 104.34(a). Placing the child in an alternative education environment does not exempt the school from the requirements imposed by section 504. *See id.* § 104.33(a)(3).

80.    The Act also requires a school to have standards and procedures in place for evaluation and reevaluation of students who fall or may fall within the Act's purview. *See generally id.* § 104.35. A school must, among other things, establish procedures to ensure that all evaluation data obtained from various sources is documented and carefully considered. *See generally id.* § 104.35.

81.    Section 104.36 of the CFR articulates that schools must establish and implement procedural safeguards to protect disabled students, including notice, an opportunity for parents to examine relevant records, an impartial hearing, and a review procedure. *See id.* § 104.36.

82.    With respect to counseling services, section 504 requires that a school provide such services without discrimination based on disability. *See id.* § 104.36(b).

83.    The District is a recipient of federal funds operating an educational program or activity and is therefore subject to section 504. *See id.* §§ 104.2, .31, .3(k)((1).

84.    Montana was disabled as defined by section 504 because he had diagnosed impairments that substantially limited major life activities including, without limitation, thinking, learning, concentrating, and interacting with others. *See id.* § 104.3(j).

85.    By, through, and because of the acts of the District and its personnel as set forth more fully above, Montana was excluded from participating in, denied the benefits of, and/or subjected to discrimination under programs and activities operated by the District in violation of section 504.

17

86.    By, through, and because of the acts of the District and its personnel as set forth more fully above, including without limitations the District's repeated failures to implement his IEP and BIP, Montana was denied a FAPE in violation of section 504.

87.    By, through, and because of the acts of the District and its personnel as set forth more fully above, the District removed Montana from his regular educational environment without demonstrating that Montana could not be satisfactorily educated in that environment with the use of supplementary aids and services. This, too, violated section 504.

88.    When the District placed Montana in the DAEP, it remained bound by section 504 and violated it by, among other things as set forth more fully above, failing to afford him procedural safeguards and failing to implement his IEP and BIP.

89.    By, through, and because of the acts of the District and its personnel as set forth more fully above, the District failed to have standards and procedures in place for evaluation and reevaluation of disabled students in violation of section 504. The District's violative acts included, without limitation, failing to have in place and follow procedures regarding documentation and consideration of evaluation data such as the school psychologist's report.

90.    By, through, and because of the acts of the District and its personnel as set forth more fully above, the District violated section 504 by failing to establish and implement procedural safeguards to protect Montana. Among other things as set forth more fully above, the District failed to provide Montana's parents with notice regarding his evaluation data and behavioral/disciplinary incidents, failed to give Montana's parents an opportunity to examine relevant records including the school psychologist's report indicating suicidal ideations and diagnosing various disabilities, and refused them impartial hearings and review procedures. All of these acts by the District violated section 504.

18

91.   By, through, and because of the acts of the District and its personnel as set forth more fully above, the District violated section 504 by failing to address Montana's behavioral and disciplinary issues related to his disability through counseling.

92.   The District's violations of section 504 proximately caused damages to Montana, his estate, and the Lances, including economic damages, non-economic damages, attorney's fees, and other damages set forth herein.

93.   Additionally and in the alternative, the Lances plead that the District ratified the acts and omissions of its agents, personnel, and/or staff and as such are responsible for such acts and omissions.

### Section 1983

94.   The Lances incorporate paragraphs 1-93 of this second amended complaint by reference as if they were fully set forth herein.

95.   To state a claim for relief under section 1983, a plaintiff must assert a deprivation of a constitutional right committed under color of state law.  *See* 42 U.S.C. § 1983.

96.   A state does not generally have a duty to protect an individual from private harm, subject to two exceptions.

### Special Relationship

97.   A state does have a duty to protect a citizen from private harm when the state has a "special relationship" with the individual.  *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 198-200 (1989).

98.   LISD had a special relationship with Montana.

99.   At age nine (and younger during the relevant periods of time), Montana was a very young child suffering from disabilities including emotional disturbances.  Moreover, he was a

19

recipient of special education services and had an IEP and BIP in place (although they were never followed).

100.    The District affirmatively punished Montana for his involvement in altercations with other students and affirmatively placed him in a DAEP, stripping him of his ability to protect himself from known bullies and instilling in him the notion that the school would not protect him.

101.    LISD prevented Montana's parents from protecting him by failing to provide them notice of and an opportunity to review crucial information regarding Montana and also failing to afford Montana procedural safeguards of which his parents would presumably have been made aware. These affirmative acts prevented Montana's own mother and father from providing for their son's safety.

102.    On the day of his death, District personnel affirmatively placed Montana in ISS, a restrictive and punitive environment that amounted to a custodial situation because it confined Montana, prevented him from protecting himself, and created an unsafe environment where he could easily harm himself.

103.    Taken together, these facts, along with those set forth more fully above, establish that a special relationship existed between the District and Montana.

104.    In light of this special relationship, the District had a duty not to be deliberately indifferent to ensuring Montana's reasonable safety.

105.    Deliberate indifference requires a conscious disregard of a known and excessive risk to the victim's health and safety. *See Hernandez v. Texas Dep't of Protective and Regulatory Servs.*, 380 F.3d 872, 880 (5th Cir. 2004).

106.    In this case, the District knew of Montana's suicidal ideations articulated to both the school psychologist and Riek.

107.    The District knew of his disabilities, his IEP, and his BIP.

20

108.    The District knew the restroom had a lock and that Montana had locked himself in that restroom before. They also knew that the nurse did not have a key to open the door.

109.    Taken together, these facts, along with those set forth more fully above, establish deliberate indifference to Montana's health and safety on the part of the District and/or its agents, who were state actors.

110.    This deliberate indifference violated the rights and privileges Montana was afforded by the Fourteenth Amendment to the United States Constitution, the Rehabilitation Act, and other federal laws.

111.    The deprivation of Montana's constitutional rights under color of state law set forth above proximately caused damages to Montana, his estate, and the Lances, including economic damages, non-economic damages, attorney's fees, and other damages set forth herein.

112.    Additionally and in the alternative, the Lances plead that the District ratified the acts and omissions of its agents, personnel, and/or staff and as such are responsible for such acts and omissions.

### State-Created Danger

113.    The second exception to the general rule that a state does not have a duty to protect private citizens is when the constitutional violation occurs as a result of a "state-created danger".[3]

114.    To satisfy the state-created danger theory, a plaintiff must show, at a minimum, that the state actors created or increased the danger to the individual and that the state actors acted with deliberate indifference.[4] *See Morin v. Moore*, 309 F.3d 316, 322 (5th Cir. 2002).

---

[3] Magistrate Mazzant's report and recommendation on LISD's motion to dismiss dated August 23, 2011 (Dkt. # 29), recommends that the Court deny the motion as to the special relationship theory and grant the motion as to the state-created danger theory.  The Lances intend to file, respectfully, an objection to this portion of the report and recommendation, and plead this cause of action subject to that objection.

[4] Although the Fifth Circuit has not formally adopted the state-created danger theory, neither has it formally rejected it or affirmatively stated that a plaintiff could never prevail under such a theory.

115.    The District and its agents, including Principal Land, affirmatively punished Montana for his involvement in altercations with other students and affirmatively placed him in a DAEP rather than conducting an investigation or affording him procedural safeguards to which he was entitled under federal law. This increased the danger to Montana by stripping him of his ability to protect himself from known bullies and instilling in him the notion that the school would not protect him.

116.    The District and its agents, including Principal Land, prevented Montana's parents from protecting him and thereby increased the danger to him by failing to provide them notice of and an opportunity to review crucial information regarding Montana and also failing to afford Montana procedural safeguards of which his parents would presumably have been made aware. These affirmative acts of the District and Principal Land prevented Montana's own parents from providing for their son's safety and placed him in an increasingly dangerous situation.

117.    On the day of his death, District personnel affirmatively placed Montana in ISS, a restrictive and punitive environment that amounted to a custodial relationship because it confined him, prevented him from protecting himself, and created an unsafe environment where he could easily harm himself.

118.    Taken together, these facts, along with those set forth more fully above, establish that state actors -- the District and its agents, including Principal Land -- not only increased the danger to Montana but affirmatively placed him in danger.

119.    In light of this state-created danger, the District and its agents, including Principal Land, had a duty not to be deliberately indifferent to ensuring Montana's reasonable safety

120.    Deliberate indifference requires a conscious disregard of a known and excessive risk to the victim's health and safety. *See Hernandez*, 380 F.3d at 880.

22

121.    In this case, the District and its agents, including Principal Land, knew of Montana's suicidal ideations articulated to both the school psychologist and Riek. The District and its agents, including Principal Land, knew of his disabilities, his IEP, and his BIP. The District and its agents, including Principal Land, knew the restroom had a lock and that Montana had locked himself in that restroom before. The District or its agents knew that the nurse did not have a key to open the door. Taken together, these facts, along with those set forth more fully above, establish deliberate indifference to Montana's health and safety on the part of the District and its agents, including Principal Land, who were state actors.

122.    This deliberate indifference violated the rights and privileges Montana was afforded by the Fourteenth Amendment to the United States Constitution, the Rehabilitation Act, and other federal laws.

123.    The deprivation of Montana's constitutional rights under color of state law set forth above proximately caused damages to Montana, his estate, and the Lances, including economic damages, non-economic damages, attorney's fees, and other damages set forth herein.

124.    Additionally and in the alternative, the Lances plead that the District ratified the acts and omissions of its agents, personnel, and/or staff and as such are responsible for such acts and omissions.

### Individual Capacity Claim against Principal Land

125.    In addition to its section 1983 claims against the District, the Lances bring a section 1983 claim against Principal Land in her individual capacity.

126.    In performing her discretionary functions as principal of Stewart's Creek, Principal Land acted under color of state law to deprive Montana of rights and privileges he was afforded by the Fourteenth Amendment to the United States Constitution, the Rehabilitation Act, and other federal laws.

23

127.    These rights were clearly established at the time Principal Land violated them and a reasonable person would have known of them.

128.    Principal Land's affirmative acts described above that deprived Montana of clearly established rights were carried out with deliberate indifference to Montana's health and safety.

129.    Deliberate indifference requires a conscious disregard of a known and excessive risk to the victim's health and safety. *See id.*

130.    In this case, Principal Land knew of Montana's suicidal ideations articulated to both the school psychologist and Rick and knew of his disabilities, his IEP, and his BIP. Yet Principal Land affirmatively acted with deliberate indifference to Montana's health and safety when, among other things, she punished him for his role in incidents directly related to his disability, affirmatively placed him in a DAEP without affording him the procedural safeguards to which he was entitled to, and denied Montana's mother's appeal of Montana's DAEP placement without any investigation.

131.    Not only were Principal Land's actions deliberately indifferent and in conscious disregard for Montana's health and safety and violative of his clearly established rights as set forth above, they were also objectively unreasonable in light of clearly established law at the time they were carried out. Principal Land knew or reasonable should have known that the actions she was taking within her sphere of official responsibility would violate Montana's clearly established rights. As such, Principal Land is not entitled to qualified immunity from a section 1983 claim in her individual capacity.

132.    Principal Land's deprivation, in her individual capacity, of Montana's constitutional rights under color of state law set forth above proximately caused damages to Montana, his estate, and the Lances, including economic damages, non-economic damages, attorney's fees, and other damages set forth herein. The Lances also seek punitive damages against Principal Land, in her individual capacity.

24

## DEMAND FOR JURY TRIAL

133.   The Lances hereby demand a trial by jury.

## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, the Lances respectfully pray that the Court enter judgment against the District and Principal Land, in her individual capacity, and award the Lances the following damages: economic damages including medical, psychological and counseling, funeral and burial, educational, and incidental expenses as well as loss of earning capacity; non-economic damages including pain and suffering, mental anguish, loss of services, and loss of consortium; litigation expenses including attorney's fees, expenses, costs of suit, and pre- and post-judgment interest; punitive damages against Principal Land, in her individual capacity; and other damages set forth herein. The Lances also request any and all other relief to which they may show themselves entitled.

Respectfully submitted,

BEARD KULTGEN BROPHY
BOSTWICK DICKSON & SQUIRES, LLP

/s/ Melissa Waden Wray
Rod S. Squires
State Bar No. 18979300
Ryan C. Johnson
State Bar No. 24048574
Melissa Waden Wray
State Bar No. 24008614
220 South Fourth Street
Post Office Box 21117
Waco, Texas 76702-1117
(254) 776-5500
(254) 776-3591 facsimile

CIRKIEL & ASSOCIATES, PC
Mr. Martin Jay Cirkiel, Esq.
State Bar No. 00783829
Mr. Christopher Bennett, Es.
State Bar No. 24069367
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658
(512) 244-6014 facsimile

THE ZIMMERMAN LAW FIRM
Mr. Michael Zimmerman, Esq.
State Bar No. 22271400
3501 W. Waco Drive
Waco, Texas 76710
(254) 752-9688
(254) 752-9680 facsimile

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

I certify that on September 1, 2011, a true and correct copy of the foregoing instrument was served on the following counsel of record by Notice of Electronic Filing:

Thomas P. Brandt
Joshua A. Skinner
Fanning Harper Martinson Brandt & Kutchin, PC
Two Energy Square
4849 Greenville Ave., Suite 1300
Dallas, Texas 75206

/s/ Melissa Waden Wray
Melissa Waden Wray

USCA5 363

# TAB 3

# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF MONTANA LANCE, | § | |
| BY AND THROUGH JASON AND | § | |
| DEBORAH LANCE, INDIVIDUALLY, | § | |
| AND UPON BEHALF OF HIS HEIRS | § | |
| | § | |
| | § | |
| V. | § | CASE  NO. 4:11-CV-00032 |
| | § | (Judge Schneider/Judge Mazzant) |
| | § | |
| LEWISVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant's Motion for Partial Dismissal of Plaintiffs' First

Amended Complaint and Brief (Dkt. #20). Having considered all the relevant pleadings, the Court

is of the opinion that the motion to dismiss should be granted in part and denied in part.

## BACKGROUND

Montana Lance, nine (9) years old, was enrolled in the fourth grade at Stewart Creek

Elementary School in Lewisville Independent School District for the 2009-2010 school year. PLS.'

AMEND. COMPL. ¶ 30. Montana was diagnosed with an emotional disturbance, a learning disability,

and a speech impairment. PLS.' AMEND. COMPL. ¶ 31. He received special education services

pursuant to the Individuals with Disabilities Education Act. *Id.* Plaintiffs allege Montana was a

frequent target of bullying by other children, beginning as early as second grade. PLS.' AMEND.

COMPL. ¶ 33. Montana was called "gay" because of his speech impediment, other students were told

1

not to sit with him, and that if they did they were "sitting at the gay table." *Id.*

On December 17, 2007, the school held an Admission, Review and Discharge ("ARD") Committee meeting to discuss Montana's problems with depression and suicide as a result of repeated bullying. PLS.' AMEND. COMPL. ¶ 36. Montana was referred for a full psychological assessment. *Id.* On or about early February of 2008, the school psychologist reported Montana was "at risk," and noted he made verbal statements about hurting himself. PLS.' AMEND. COMPL. ¶ 37. In response to the question, "I want to die," or "I wish I was dead," Montana answered "Almost Always." *Id.* The psychologist noted Montana satisfied criteria for Autism and Asperger's Syndrome. PLS.' AMEND. COMPL. ¶ 38. Plaintiffs allege this finding was never reviewed or assessed by any school personnel. *Id.* In addition, no one at the school provided Plaintiffs, Montana's parents, with a copy of the psychologist's report or spoke with them regarding the findings. PLS.' AMEND. COMPL. ¶ 39.

The ARD Committee developed an Individualized Education Plan ("IEP") that required Montana to receive counseling services for four (4) sessions of twenty (20) minutes each, during a six (6) week period. PLS.' AMEND. COMPL. ¶ 40. The ARD Committee also developed a Behavioral Intervention Plan ("BIP") to help Montana deal with emotional disturbances in the classroom. PLS.' AMEND. COMPL. ¶ 43. Plaintiffs allege that these plans were grossly inadequate to deal with Montana's suicidal thoughts and depression. Plaintiffs also allege that no steps were taken to use the BIP with Montana during any incidents that occurred in the classroom, especially when he was disciplined.

On November 4, 2009, a student verbally provoked Montana, and pushed him down on the ground. PLS.' AMEND. COMPL. ¶ 44. Montana responded by pushing the student into a stack of

chairs. *Id.* Montana received a Student Discipline Referral; however, his parents were never notified, and he received no training in accordance with his BIP. *Id.* On November 18, 2009, Montana had difficulties in class and blurted out that he had "pooped in his pants." PLS.' AMEND. COMPL. ¶ 45. His parents were never notified, and he received no training in accordance with his BIP. *Id.* On December 11, 2009, Montana received another Student Discipline Referral after being involved in an altercation with three other boys. PLS.' AMEND. COMPL. ¶ 46. Again, his parents were never notified, and he received no training in accordance with his BIP. *Id.*

On December 18, 2009, Montana pulled out a small pen knife during an altercation with a group of students who threatened to "beat him up again." PLS.' AMEND. COMPL. ¶ 47. Montana received another Student Discipline Referral, and was suspended from school. *Id.* Plaintiffs allege that the school did nothing to investigate Montana's allegations of bullying by the other kids. Further, Montana was placed in alternative school at the Lewisville Learning Center. PLS.' AMEND. COMPL. ¶ 48. Montana was denied a "Manifestation Determination Hearing" to determine if his actions were the result of his disability. PLS.' AMEND. COMPL. ¶ 49. On January 4, 2010, Plaintiff Deborah Lance ("Deborah"), Montana's mother, sent a letter to the principal to appeal Montana's placement in alternative school. PLS.' AMEND. COMPL. ¶ 50. The appeal was denied, with no indication that the principal investigated the claims of bullying. PLS.' AMEND. COMPL. ¶ 51. On January 6, 2010, Deborah sent a letter to the Executive Director of Student Services for Lewisville Independent School District appealing Montana's placement in alternative school, and indicating the incident was due to bullying. PLS.' AMEND. COMPL. ¶ 53. On January 11, 2010, Deborah sent a letter to the Lewisville Independent School District School Board explaining that Montana was a victim of bullying, and appealing his placement in alternative education. PLS.' AMEND. COMPL. ¶

3

55. There is no indication that any school district employee ever investigated any of Montana or Deborah's complaints. PLS.' AMEND. COMPL. ¶ 57.

　　During his placement in alternative school, Montana admitted to a counselor, Mike Riek, that he was suicidal. PLS.' AMEND. COMPL. ¶ 58. There is no record of any actions taken by the counselor to notify anyone, or further assess the situation. *Id.* On January 21, 2010, Montana was back in his regular classroom at Stewart Creek Elementary School. Plaintiffs' allege that Montana was bullied again by the same students responsible for the previous incidents, and Montana was sent to an office to be placed in "in-school suspension." PLS.' AMEND. COMPL. ¶ 60-63. Montana was allowed to use the restroom in the school nurse's office, where he hung himself with his belt. PLS.' AMEND. COMPL. ¶ 64. When the nurse came to check on him, she found the restroom door locked. *Id.* Montana locked himself in the same restroom on another occasion prior to his suicide. *Id.* The nurse could not locate a key to the restroom, which was designated for use by special needs students, and was required to call a janitor to open the restroom door. *Id.*

　　Plaintiffs filed their Complaint on January 21, 2011, alleging claims against several individual Defendants, all employees of Lewisville Independent School District (Dkt. #1). On April 25, 2011, Plaintiffs filed an Unopposed Motion for Leave to File First Amended Complaint (Dkt. #15), which the Court granted on May 5, 2011 (Dkt. #17). Plaintiffs' First Amended Complaint was filed on April 25, 2011, alleging claims against only Lewisville Independent School District (Dkt. #16). On May 18, 2011, Defendant filed its Motion for Partial Dismissal of Plaintiffs' First Amended Complaint (Dkt. #20). Plaintiffs filed their Response to Defendant's Motion for Dismissal on June 3, 2011 (Dkt. #26). On June 10, 2011, Defendant filed its Reply to Plaintiffs' Response (Dkt. #27).

4

Defendant argues Plaintiffs' claims fall under a violation of Section 504 of the Rehabilitation Act, a violation of the Fourteenth Amendment brought under 42 U.S.C. § 1983, and a violation of the Texas Human Resources Code. DEF.'S MOTION TO DISMISS, at 4-5. Defendant argues Plaintiffs' claims under 42 U.S.C. § 1983 must be dismissed under Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim under the state-created danger theory or a special-relationship theory. *Id.* at 8-11. Defendant also argues Plaintiffs' claims for punitive damages should be dismissed. *Id.* at 11. Plaintiffs argue in their response that they should be allowed to amend their Complaint prior to dismissal of their claims. PLS.' RESPONSE, at 3.

## STANDARD

Defendants move for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes certain defenses to be presented *via* pretrial motions. A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable

5

to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "The Supreme Court recently expounded upon the *Twombly* standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Gonzalez*, 577 F.3d at 603 (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - 'that the pleader is entitled to relief.'" *Id.*

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1951. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

In determining whether to grant a motion to dismiss, a district court may generally not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). However,

a district court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.*

## ANALYSIS

### *Plaintiffs' Claims Under 42 U.S.C. § 1983*

Section 1983 is not a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (*quoting Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979)); *Goad v. Lanier*, No. Civ.A.H-06-0718, 2006 WL 1698014, at \*2 (S.D. Tex. June 16, 2006). To state a claim for relief under Section 1983, a plaintiff must assert a deprivation "of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Goad*, 2006 WL 1698014, at \*2. Plaintiffs allege Defendant violated Montana's right to substantive due process under the Fourteenth Amendment to the United States Constitution and other laws of the United States. PLS.' AMEND. COMPL. ¶ 73. The Due Process Clause of the Fourteenth Amendment provides that "no state shall... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

#### a. Special Relationship

The Supreme Court made it clear that as a general matter, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv.*, 489 U.S. 189, 197 (1989). In *DeShaney*, a child and his mother filed a section 1983 action against state social workers, asserting that they failed in their duty to protect the child from a severe beating at the hands of his father. *Id.* at 193. The state social workers were aware that the child might be the victim of abuse; however, they found

7

insufficient evidence to remove the child from the custody of his father. *Id.* Although the Supreme

Court recognized that generally no duty exists to protect individuals against private violence, such

a duty does exist when the State has a "special relationship" with that citizen. *Id.* at 198-200.

> When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g. food, clothing, shelter, medical care, and reasonable safety - it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*Id.* (citations omitted). Plaintiffs argue that Defendant had a "special relationship" with Montana

because he was a young child, suffering from emotional disturbances, had an individualized

education plan, a behavioral intervention plan, and on the day of his suicide he was placed in "in-

school suspension." Plaintiffs assert that this restricted, punitive environment was the equivalent

of placing Montana in custody because it confined his freedom, prevented him from protecting

himself, and placed him in an environment where he could easily hurt himself.

The Fifth Circuit has also considered the issue of whether a "special relationship" exists

between a minor student and his school while the student is attending school during school hours.[1]

In *Walton v. Alexander*, 44 F.3d 1297, 1299 (5th Cir. 1995), a student voluntarily attended a state

school for the deaf where he was under supervision and was subject to strict rules regarding his

coming and going. While attending school, the student was sexually assaulted on school grounds

---

[1] The Fifth Circuit held that no special relationship exists between the student and the school while students attend after-school activities on campus. *Priester v. Lowndes Cnty.*, 354 F.3d 414 (5th Cir. 2004). "Although the students may have been 'compelled to attend school during the day, any special relationship that may have existed lapsed when compulsory attendance ended.'" *Id.* at 422 (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 530 (5th Cir. 1994)).

USCA5 293

by a classmate. *Id.* The Fifth Circuit found that a special relationship arises only when a person is *involuntarily* confined or restrained against his will. *Id.* at 1304 (emphasis added). Since the plaintiff attended the school for the deaf voluntarily, and chose to be placed in the restrictive conditions, there was no special relationship to subject the school to liability under section 1983. *Id.* at 1305. However, in dicta, the Fifth Circuit recognized that a school does create a special relationship with a student if it *affirmatively acts* to confine the student against his will, depriving him of his ability to defend himself. *Id.* (emphasis added).

In *Doe v. Hillsboro Independent School District*, 113 F.3d 1412 (5th Cir. 1997), the Fifth Circuit established that public school custody of students at least as old as thirteen (13) was not equivalent to state imprisonment or institutionalization of adults. The Court found that compulsory attendance laws alone did not create a special relationship. *Id.* at 1415.

> Though attendance may not always be voluntary, the public school remains an open institution. Except perhaps when very young, the child is not physically restrained from leaving school during school hours; and at the end of the school day, the child is invariably free to return home. Even while at school, the child brings with him the support of family and friends and is rarely apart from teachers and other pupils who may witness and protest any instances of mistreatment.

*Id.* (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). However, the Court suggested that a school could have a special relationship with a student if "[the student] is (1) 'very young,' (2) is 'physically restrained' by (and unable to leave) the school's custody, and (3) is secluded or kept 'apart from teachers and other pupils who may witness and protest any instances of mistreatment.'" *Doe v. Covington Cnty. Sch. Dist.*, No. 09-60406, 2011 WL 3375531, at *7 (5th Cir. Aug. 5, 2011) (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d at 1416).

Plaintiffs' argument that a special relationship should exist is based on *Teague ex. Rel. C.R.T.*

9

*v. Texas City Independent School District*, 348 F. Supp. 2d 785, 792 (S.D. Tex. 2004)[2], in which the District Court held that students with identified intelligence deficiencies are fundamentally different than other students because they suffer from disabilities that impact their abilities to function in society. "Much more so than any other children, they completely lack the skills to... otherwise defend themselves from those who would do them harm." *Id.* at 792-93. The Court found that the holdings in the Fifth Circuit cases discussed above left open the possibility that Texas' compulsory attendance laws, in conjunction with other factors such as mental disability, might result in the creation of a special relationship between the student and the school. *Id.* at 793.

However, the Fifth Circuit recently considered the issue of when a special relationship is sufficiently created to subject the school to liability for a constitutional violation of 42 U.S.C. § 1983. *Doe v. Covington County School District*, No. 09-60406, 2011 WL 3375531 (5th Cir. Aug. 5, 2011). In *Doe v. Covington*, Jane, a nine-year-old student at a compulsory attendance elementary public school, was released from school during school hours on at least six occasions to a person not listed on her "Permission to Check Out Form." *Id.* at *3. On each occasion, Jane was brutally raped and molested by the man, and then returned to school. *Id.* The school's policy required each student to have a form listing those adults with permission to remove the student from school. *Id.* However, the school failed to check the form to verify the man had permission to remove Jane from school, and failed to verify his identification documents to make sure he was who he purported to be. *Id.*

---

[2]Vacated in part by *Teague ex rel. C.R.T. v. Texas City Indep. Sch. Dist.*, 386 F. Supp. 2d 893 (S.D. Tex. Aug. 17, 2005), granting summary judgment for defendant after further discovery revealed the allegations by plaintiff were exaggerated, and were not sufficient to survive a motion for summary judgment. After defendants presented evidence that the mentally disabled student functioned at the mental age of thirteen, the Court dismissed the claim, explaining that the Fifth Circuit held that the age of thirteen is not enough to create a special relationship. *Teague*, 386 F. Supp. 2d at 896; *see also Goad*, 2006 WL 1698014, at *6 (S.D. Tex. June 16, 2006).

The Fifth Circuit found the school had a special relationship with Jane because,

> (1) unlike the student in *Hillsboro*, Jane was an elementary-school student and was only nine years old, which is a *very young*, prepubescent age; and (2) unlike the school in *Walton*, Jane's school *affirmatively acted*, pursuant to its express check-out policy, to isolate nine-year-old Jane from her teachers and classmates and then, without her legal guardian's knowledge or consent, force her into Keyes' exclusive off-campus custody.

*Id.* at *7 (emphasis in original). The Court held that the degree of special relationship conferred corresponds to the "age and competency of the individual in question, i.e., his mental, psychological, and physical ability to recognize and defend himself against threats to his safety." *Id.* at *8. "When the State restrains an incompetent, intellectually disabled adult, it has the unquestioned duty to provide reasonable safety." *Id.* However, the Court did not conclude that all elementary-school children have a protected liberty interest in remaining safe at school. *Id.*

The Fifth Circuit went on to find that in addition to Jane's young age, the affirmative exercise of the school's power further disabled Jane and obligated the school to protect her. *Id.* at *9. The Fifth Circuit noted that the Supreme Court in *DeShaney* specified that had the social workers in that case *actively* placed the child in the custody of a foster parent (instead of passively allowing him to remain in custody of his father), the social workers might have had a duty to protect the child from private violence. *Id.* "If the State had custody of a child and then *affirmatively* placed him in a non-legal guardian, private actor's custody, it might have a special relationship with that child, and it would violate the Constitution *if* it was deliberately indifferent to that child's personal security when it handed him over to that private actor." *Id.* (emphasis in original).

Similarly, Montana was nine years old at the time of his death, the same age the Fifth Circuit determined to be a very young student. In addition, he was considered a special education student,

11

and suffered from emotional disturbances, a learning disability, and a speech impairment. Although the Fifth Circuit in *Doe v. Covington* did not consider whether age alone is enough to create a special relationship between a very young student and his school, it did indicate that it might be sufficient. Montana's very young age, plus his emotional disabilities, indicate that Montana might have had a lower level of social functioning and ability to assess threats to his safety.

Further, Defendant affirmatively punished Montana for his involvement in altercations with other students. Defendant affirmatively placed Montana in an alternative education program following one of the incidents. These actions stripped Montana of his ability to protect himself from bullying by other students, and instilled in him the notion that the school, an institution he was taught to trust, would not protect him. Like the child in *Doe v. Covington*, the affirmative exercise of the school's power further disabled Montana, and obligated the school to protect him.

On the day of his death, Montana was affirmatively removed from the regular classroom, and placed in an area secluded from his regular teacher and classmates. It is unknown who was charged with the responsibility of supervising Montana while he served his in-school suspension. However, Defendant affirmatively took him into their custody, and placed him in isolation from the regular classroom environment. The restroom was one which Montana previously locked himself inside. The restroom contained an apparatus sufficient to support his weight, and school personnel lacked the capacity to open the door in case of an emergency. The "special relationship" contemplated by the Supreme Court is triggered "when the school's affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g. food, clothing, shelter, medical care, and reasonable safety."

12

*DeShaney,* 489 U.S. at 199-200.

Defendant further prevented Montana's parents and legal guardians from protecting him by failing to provide them with information regarding Montana's suicide risk. While Montana's parents remained his primary caretakers even while he attended school, the school removed from Montana's parents the possibility of providing for his reasonable safety by withholding information regarding his psychological health and behavioral incidents at school.

In addition, the school failed to implement any of the BIP techniques to help Montana during behavioral incidents occurring in the classroom. The counselor at the alternative placement school failed to notify school personnel of Montana's suicide threats, or take further measures to assess the risk to Montana. Defendant's employees at all levels failed to investigate the bullying and harassment claims made by Deborah and Montana. These acts, although passive, increased the danger to Montana's reasonable safety prior to the affirmative act of removing Montana from the regular classroom and placing him in isolation.

The Court finds that the young age of Montana, his disabilities, and the affirmative acts taken by the school are sufficient at this stage of the case to indicate that a "special relationship" existed between Montana and the school.

To act with deliberate indifference, "a state actor must consciously disregard a known and excessive risk to the victim's health and safety." *Hernandez v. Texas Dep't Of Protective and Regulatory Services,* 380 F.3d 872, 880 (5th Cir. 2004); *Doe v. Covington Cnty.,* 2011 WL 3375531, at *12. Plaintiffs allege that Defendant knew of Montana's suicide threats to both the psychologist and counselor in alternative school, his emotional disabilities, and his IEP, which included a

13

behavioral component. In addition, Plaintiffs allege that Defendant knew that the restroom had a lock on it, that Montana locked himself in the same restroom on a previous occasion, and that the nurse did not have a key to open the restroom in case of an emergency.

Accepting these alleged facts as true, as the Court must do at this stage of the case, the Court finds that the school acted with deliberate indifference to Montana's reasonable safety.

### b. State-Created Danger Theory

To satisfy the state-created danger theory, Plaintiffs must at a minimum show (1) "the state actors created or increased the danger to the plaintiff and (2) the state actors acted with deliberate indifference." *Morin v. Moore*, 309 F.3d 316, 322 (5th Cir. 2002) (citation omitted). The "key to the state-created danger cases . . . [is] the state actors' culpable knowledge and conduct in affirmatively placing [the] individual in a position of danger, effectively stripping the person of [his] ability to defend himself, or cutting off potential sources of private aid." *Johnson v. Dallas Indep. Sch. Dist.*,38 F.3d 198, 201 (5th Cir. 1994) (internal quotations omitted). "To be liable, they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur." *Id.*

The Fifth Circuit has consistently declined to adopt the state-created danger theory to trigger State affirmative duties under the Due Process clause. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 (5th Cir. 2003); *Piotrowski v. City of Houston*, 237 F.3d 567, 584 (5th Cir. 2001). Therefore, Plaintiffs' claim under the state-created danger exception under 42 U.S.C. § 1983 should be dismissed.

14

*Punitive Damages*

Defendant asserts that Plaintiffs' claims fall under three main categories, involving violations of Section 504 of the Rehabilitation Act, the Fourteenth Amendment, and the Texas Human Resource Code. Defendant argues that punitive or exemplary damages are not recoverable against a government, government agency, or political subdivision under any of Plaintiffs' causes of action. In their response, Plaintiffs fail to respond to Defendant's arguments regarding punitive damages.

Government agencies are generally excluded from punitive damages awards under § 1983 claims and under Section 504 of the Rehabilitation Act. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (no punitive damages against governmental entities under Section 504 or the Americans with Disabilities Act); *City of Newport v. Fact Concerts Inc.*, 453 U.S. 247, 271 (1981) (no punitive damages against governmental entities under 1983 claims). In addition, to subject a municipality to punitive damages under the TEX. CIV. PRAC. & REM. CODE § 71.021 and TEX. HUM. RES. CODE § 121.003, immunity from punitive damages must specifically be waived. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 701-02 (Tex. 2003) (requiring clear waiver of immunity in Texas legislation to find municipalities subject to exemplary damages). Neither statute expressly waives immunity. Moreover, TEX. CIV. PRAC. & REM. CODE § 71.001 specifically excludes independent school districts from the definition of a "person." Therefore, punitive damages are not available for recovery under these claims. The Court finds that Plaintiffs' claims for punitive damages should be dismissed.

*Request for Leave to Amend Complaint*

Plaintiffs request the opportunity to amend their First Amended Complaint (Dkt. #16) if this

15

Court believes Defendant's Motion to Dismiss should be granted.  Plaintiffs have already amended once, therefore any additional amendments can only be made by leave of court or by written consent of the adverse party.  FED. R. CIV. P. 15(a).  While Plaintiffs provide case law showing that an opportunity to amend is often warranted, Plaintiffs provide no grounds on which their amendment should be permitted.  Therefore, this request will not be considered because a "bare request in an opposition to a motion to dismiss - without any indication of the particular grounds on which the amendment is sought - does not constitute a motion with the contemplation of [FRCP] 15(a)."  *U.S. v. Human Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (internal quotations omitted).  Because Plaintiffs did not submit an adequate motion to amend the pleadings, setting forth with particularity the grounds for the amendment and the relief sought, this Court will not consider at this time whether Plaintiffs should be given the opportunity to amend their First Amended Complaint.

## RECOMMENDATION

Based upon the foregoing, the Court finds Plaintiffs have sufficiently alleged facts to support a claim under 42 U.S.C. § 1983, and those claims should remain.  Plaintiffs' claims for punitive damages should be dismissed, and Plaintiffs' request for leave to amend their complaint should be denied.

Therefore, the Court recommends Defendant's Motion for Partial Dismissal of Plaintiffs' First Amended Complaint and Brief (Dkt. #20) should be **GRANTED** in part, and **DENIED** in part.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).

16

USCA5 301

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 23rd day of August, 2011.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE

USCA5 302

# TAB 4

# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF MONTANA LANCE, | § | |
| BY AND THROUGH JASON AND | § | |
| DEBORAH LANCE, INDIVIDUALLY, | § | |
| AND UPON BEHALF OF HIS HEIRS | § | |
| | § | |
| | § | |
| V. | § | CASE  NO. 4:11-CV-00032 |
| | § | (Judge Schneider/Judge Mazzant) |
| | § | |
| LEWISVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT | § | |

### MEMORANDUM ADOPTING REPORT AND
### RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this

matter having been heretofore referred to the United States Magistrate Judge pursuant to 28 U.S.C.

§ 636.  On August 23, 2011, the report of the Magistrate Judge was entered containing proposed

findings of fact and recommendations that Defendant's Motion for Partial Dismissal of Plaintiffs'

First Amended Complaint and Brief (Dkt. #20) should be granted in part and denied in part.

The Court, having made a *de novo* review of the objections of Plaintiffs and Defendant

Lewisville Independent School District, is of the opinion that the findings and conclusions of the

Magistrate Judge are correct, and the objections are without merit.  Therefore, the Court hereby

adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of this

Court.

It is, therefore, **ORDERED** that Defendant's Motion for Partial Dismissal of Plaintiffs' First

Amended Complaint and Brief (Dkt. #20) is **GRANTED** in part, and **DENIED** in part.  Plaintiffs

have sufficiently alleged facts to support a claim under 42 U.S.C. § 1983, and those claims shall

remain.  Plaintiffs' claims for punitive damages are dismissed, and Plaintiffs' request for leave to amend their complaint is denied.

**It is SO ORDERED.**

**SIGNED this 13th day of September, 2011.**


MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

USCA5 403

# TAB 5

By and through

# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

THE ESTATE OF MONTANA LANCE,     §
BY AND THROUGH JASON AND     §
DEBORAH LANCE, INDIVIDUALLY,     §
AND UPON BEHALF OF HIS HEIRS     §
    §
v.     §    Case No. 4:11-CV-00032
    §    Judge Clark/Judge Mazzant
LEWISVILLE INDEPENDENT SCHOOL     §
DISTRICT     §

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court are Plaintiffs' Motion for Partial Summary Judgment (Dkt. #60),

Defendant's Motion to Dismiss Plaintiffs' Section 1983 Claims Pursuant to *Doe v. Covington* (Dkt.

#71), Defendant's Motion for Summary Judgment on Plaintiffs' Disability Discrimination Claims

(Dkt. #75), Defendant's Motion for Summary Judgment on Plaintiffs' Special Relationship and State

Law Claims (Dkt. #76), and Defendant's Objections to and Motion to Strike Plaintiffs' Summary

Judgment Evidence (Dkt. #98). Having considered the relevant pleadings, and the responses thereto,

the Court recommends that Plaintiffs' Motion for Partial Summary Judgment (Dkt. #60) be denied,

Defendant's Motion to Dismiss Plaintiffs' Section 1983 Claims Pursuant to *Doe v. Covington* (Dkt.

#71) be denied, Defendant's Motion for Summary Judgment on Plaintiffs' Disability Discrimination

Claims (Dkt. #75) be granted, Defendant's Motion for Summary Judgment on Plaintiffs' Special

Relationship and State Law Claims (Dkt. #76) be granted, and Defendant's Objections to and Motion

to Strike Plaintiffs' Summary Judgment Evidence (Dkt. #98) be denied.

### BACKGROUND FACTS

Montana Lance was born on March 2, 2000 (Dkt. #94 at 8). He was considered a special

needs student and was diagnosed with ADHD, emotional disturbance, and a speech impairment, which qualified him for special education services pursuant to the IDEA. *Id.* Montana Lance attended school at Stewarts Creek Elementary School in the Lewisville Independent School District ("LISD") beginning in 2005-2006. Plaintiffs assert that during his kindergarten year, Montana became the target of bullying. *Id.* Defendant denies that Montana was ever bullied at school.

Plaintiffs contend that the bullying continued throughout Montana's time at Stewarts Creek, including his third and fourth grade years, and that his teachers and administrators were aware of the bullying that occurred. Plaintiffs contend that Montana was labeled a "problem child" and a "tattletale" because he attempted to make his teacher and principal aware of the bullying. *Id.* Plaintiffs contend that Defendant employees failed to implement their own official policies on bullying by failing to investigate the allegations made by Montana and his parents. *Id.* at 9.

Prior to his death, Montana recorded in a school journal that he could no longer handle the bullies at school, and told school personnel that he was going to kill himself. *Id.* at 10. In fact, Montana made numerous threats to kill himself to his parents and various mental health professionals, including some at LISD. *Id.* Plaintiffs also assert that Defendant failed to follow its own policy regarding suicidal statements made at school. *Id.* In addition, a psychological assessment of Montana's mental health made by LISD was conducted that indicated that Montana satisfied the diagnostic criteria for major depressive disorder, autism, and Asperger's syndrome; however, no diagnoses were added to Montana's Individualized Education Plan ("IEP") and no report was made. *Id.* at 11. In fact, Plaintiffs assert that this report has never been available for review, because school officials have not located any documents demonstrating that a report was ever created. *Id.*

2

In November and December of 2009, Montana was involved in several incidents resulting in his receiving punishment for being involved in altercations with other students. *Id.* at 12-13. Plaintiffs assert that these were all a result of other students bullying Montana, and his subsequent reaction to the bullying. On December 18, 2009, in response to some students who threatened to "beat him up," Montana pulled a small pen knife out of his pocket. *Id.* at 13. The students involved were reprimanded. Montana was sent to alternative school for ten (10) days. *Id.* The other students received one day of expulsion. Montana's parents appealed his placement in alternative school to both the principal at Stewarts Creek and Rocky Brookmole, Executive Director of Student Services for LISD. *Id.* at 15. Montana's parents made both of these individuals aware that Montana reported he was being bullied during this incident. Montana's placement at alternative school was eventually reduced to eight (8) days. *Id.* While in alternative school, Montana threatened to kill himself, and was counseled by a school counselor who assessed his actual intent to harm himself as low.

On January 21, 2010, Montana returned to the regular classroom, where he was again bullied by another student. *Id.* at 16. Montana was sent to the office later in the day, where he was placed in "In-School Suspension" ("ISS") in the office area. *Id.* While in the office, Montana was not allowed to use the regular student restroom, but was required to use the restroom in the school nurse's office. *Id.* Montana and other students had previously locked themselves in this bathroom on other occasions, and had remained inside for extended periods of time. *Id.* Montana hung himself in the bathroom using his belt. *Id.* School personnel could not obtain access to the bathroom, and after several minutes passed, the nurse had to call a school janitor to open the door with a screwdriver. *Id.* at 16-17.

3

## PROCEDURAL HISTORY

On March 21, 2012, Plaintiffs filed their Motion for Partial Summary Judgment (Dkt. #60). Defendant filed its response on April 12, 2012 (Dkt. #80). On April 23, 2012, Plaintiffs filed their reply (Dkt. #83).

On April 9, 2012, Defendant filed its Motion to Dismiss Plaintiffs' Section 1983 Claims Pursuant to *Doe v. Covington* (Dkt. #71). Plaintiffs filed their response on April 26, 2012 (Dkt. #91). On April 30, 2012, Defendant filed its reply (Dkt. #99). Plaintiffs filed their sur-reply on May 9, 2012 (Dkt. #112).

On April 9, 2012, Defendant filed its Motion for Summary Judgment on Plaintiffs' Disability Discrimination Claims (Dkt. #75) and its Motion for Summary Judgment on Plaintiffs' Special Relationship and State Law Claims (Dkt. #76). Plaintiffs filed a joint response on April 26, 2012 (Dkt. #94). On April 30, 2012, Defendant filed its replies (Dkt. #104; #100). Plaintiffs filed their sur-reply on May 7, 2012 (Dkt. #107). In addition, Defendant filed a response to Plaintiffs' objections on April 30, 2012 (Dkt. #96).

On April 30, 2012, Defendant filed its Objections to and Motion to Strike Plaintiffs' Summary Judgment Evidence (Dkt. #98). On May 10, 2012, Plaintiffs filed their response (Dkt. #120).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

4

law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex,* 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers,* 209 F.3d at 424 (citing *Anderson,* 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson,* 477 U.S. at 257.

## ANALYSIS

*A. Defendant's Motion for Summary Judgment on Plaintiffs' Special Relationship and State Law Claims (Dkt. #76)[1]*

---

[1]Plaintiffs and Defendant have objected to portions of the evidence provided in support of each party's motions and responses to summary judgment. If the Court considers any of the objectionable evidence, the Court will consider the objection to that evidence at that time.

5

Defendant argues that it is entitled to summary judgment on Plaintiffs' Section 1983 claims because Plaintiffs are unable to establish a constitutional deprivation and fail to establish that the alleged constitutional deprivation was caused by a policy, custom, or practice of the school district (Dkt. #76 at 1).  Defendant further asserts that it is entitled to summary judgment on its state law claims.[2]  Plaintiffs contend that they have asserted a claim under the plain language of 42 U.S.C. § 1983, a second claim for municipal liability under *Monell*, and a claim under the special relationship theory (Dkt. #94 at 18-23).  Plaintiffs also ask the Court to reconsider its prior dismissal of their claim under the state-created danger theory.[3]  *Id.* at 22.

### 1. Special Relationship

Section 1983 is not a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979)); *Goad v. Lanier*, No. Civ.A.H-06-0718, 2006 WL 1698014, at *2 (S.D. Tex. June 16, 2006).  To state a claim for relief under Section 1983, a plaintiff must assert a deprivation "of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Doe v. Covington*, No. 09-60406, 2012 WL 976349, at *3 (5th Cir. Mar. 23, 2012); *Goad*, 2006 WL 1698014, at *2.  The question here is whether Plaintiffs have

---

[2] The Court previously recommended dismissal of Plaintiffs' State Law Claims (Dkt. #106).

[3] The Court declines to reconsider its prior dismissal of Plaintiffs' 42 U.S.C. § 1983 claim under the state-created danger theory.  To satisfy the state-created danger theory, Plaintiffs must at a minimum show (1) "the state actors created or increased the danger to the plaintiff and (2) the state actors acted with deliberate indifference." *Morin v. Moore*, 309 F.3d 316, 322 (5th Cir. 2002) (citation omitted).  However, the Fifth Circuit has consistently declined to adopt the state-created danger theory. *Doe v. Covington*, No. 09-60406, 2012 WL 976349, at *13 (5th Cir. Mar. 23, 2012) ("[W]e have never explicitly adopted the state-created danger theory.").  Therefore, the Court will not reconsider its prior dismissal of this claim at this time.

6

alleged a violation of a constitutional right.

The Supreme Court made it clear that as a general matter, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv.*, 489 U.S. 189, 197 (1989). In *DeShaney*, a child and his mother filed a section 1983 action against state social workers, asserting that they failed in their duty to protect the child from a severe beating at the hands of his father. *Id.* at 193. The state social workers were aware that the child might be the victim of abuse; however, they found insufficient evidence to remove the child from the custody of his father. *Id.* Although the Supreme Court recognized that generally no duty exists to protect individuals against private violence, such a duty does exist when the State has a "special relationship" with that citizen. *Id.* at 198-200.

> When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - e.g. food, clothing, shelter, medical care, and reasonable safety - it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*Id.* (citations omitted). In these instances, "the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Doe*, 2012 WL 976349, at *4 (citing *DeShaney*, 489 U.S. at 200). That special relationship exists when the state incarcerates a prisoner, involuntarily commits a person to an institution, or places a child in foster care. *Doe*, 2012 WL 976349, at *4. The Fifth Circuit has held, "We have not extended the *DeShaney* special relationship exception beyond these three situations, and have explicitly held that the state does *not* create a special relationship with children attending public schools." *Id.* at *5 (emphasis in original).

7

In light of the recent holding by the Fifth Circuit in *Doe v. Covington*, the Court finds that no special relationship exists in the present case.

> We reaffirm, then, decades of binding precedent: a public school does not have a *DeShaney* special relationship with its students requiring the school to ensure the students' safety from private actors. Public schools do not take students into custody and hold them there against their will in the same way that a state takes prisoners, involuntarily committed mental health patients, and foster children into its custody. Without a special relationship, a public school has no *constitutional* duty to ensure that its students are safe from private violence. That is not to say that schools have absolutely no duty to ensure that students are safe during the school day. Schools may have such a duty by virtue of a state's tort or other laws. However, '[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.'

*Id.* at *6 (internal citations omitted, emphasis in original). The Fifth Circuit went on to hold that compulsory school attendance laws, combined with the young age of the student, and the affirmative act of placing the student in the custody of the private actor was not sufficient for the Court to conclude that the school assumed a constitutional duty to protect the student.

In the present case, Plaintiffs argue that LISD employees affirmatively confined Montana, a student known to be bullied, harassed, emotionally disturbed, depressed, and suicidal, to a room that Montana was unable to exit, and no one, including his parents, were able to enter (Dkt. #91 at 29). Further, Plaintiffs attempt to distinguish this case from the facts in *Doe v. Covington* by arguing that the affirmative acts of the school district employees go far beyond the passive decision to release a child to the custody of a third party, and instead indicate a clear disregard for district policies on bullying. *Id.* In fact, Plaintiffs' evidence clearly indicates that Vice Principal Amy Teddy ("Teddy") failed to investigate allegations of bullying made by Montana in the incident that led to Montana being sent to alternative school (Dkt. #94 at 13). This is a violation of LISD's policies regarding bullying, and the appropriate response required by school officials. In addition, Plaintiffs' evidence

8

indicates that Montana's mother sent a letter to Principal Lea Land ("Land") asserting that Montana

was bullied by the other students involved in the incident (Dkt. #94, Ex. 10).  Land also failed to

conduct an investigation of the incident and summarily denied Ms. Lance's appeal.  In addition,

Plaintiffs assert that school district employees had actual knowledge that Montana was bullied,

harassed, and suicidal, and still chose to place him in a school bathroom where he had been known

to lock himself inside before (Dkt. #91 at 13).  Finally, Plaintiffs argue that the plaintiffs in the *Doe*

*v. Covington* case had a state law remedy available to them; however, there is no such state law

remedy available in Texas.  *Id.*

The Court agrees that there are certainly factual differences between the allegations in *Doe*

*v. Covington* and the allegations in the present case.  However, given the Fifth Circuit holding that

the state does *not* create a special relationship with children attending public schools, the Court finds

that Plaintiffs' claim under 42 U.S.C. § 1983 asserting a special relationship theory of liability should

be dismissed,  and Defendant's motion for summary judgment on this claim should be granted.[4]

Further, while the placement of Montana in ISS does create a situation where the state restricted

Montana's freedoms in such a way as to place him in a form of custody, there is no indication that

this placement amounted to an incarceration, involuntary commitment to a mental institution, or

foster care.  The state certainly could be said to restrict Montana's liberties by removing him from

the normal classroom and placing him in ISS; however, there is no indication that Montana was not

free to leave at the end of the school day, or earlier, had his parents requested to pick him up for early

---

[4] Defendant also moves for dismissal of Plaintiffs' Section 1983 claims pursuant to Federal Rule of Procedure 12(b)(6) or 12(c) (Dkt. #71).  This motion asserts the same basis as Defendant's motion for summary judgment on these claims, and therefore, the Court recommends that Defendant's motion to dismiss be denied as moot.

USCA5 4766

release. It certainly seems that LISD, and its employees, failed in almost every way to provide for Montana's safety at school, mental health, and to promote an environment in which he was capable of succeeding. However, the Fifth Circuit has limited the special relationship exception to three limited circumstances in which the state has exerted custody over an individual. Therefore, the Court recommends that Plaintiffs' claim be dismissed.

### 2. Pure Statutory Liability

Plaintiffs assert that the first basis for liability is the plain language of 42 U.S.C. § 1983, which states:

> Every person who under color of [law]... subjects, or *causes to be subjected*, an citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...

42 U.S.C. § 1983 (emphasis added). Plaintiffs assert that in a "'grey zone' case such as this, where state action is not the direct cause of the alleged deprivation of rights, i.e., the state actor is not the rapist or the killer, for example, the crucial issue is causation, which is for a jury to decide" (Dkt. #94 at 18). Further, Plaintiffs assert that a jury could find that Defendant caused Montana to be subjected to the deprivation of rights by acting with deliberate indifference to his health, safety, and bodily integrity.

To state a claim under 42 U.S.C. § 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Doe*, 2012 WL 976349, at *3 (citing *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)). While the Fifth Circuit recognized a right to bodily integrity in *Doe v. Taylor Independent School District*, 15 F.3d 443 (5th

10

Cir. 1994), they found that the right is "necessarily violated when a state actor sexually abuses a schoolchild and that such misconduct deprives the child of the rights vouchsafed by the Fourteenth Amendment." *Id.* at 451-52.

In the present case, the actual violation of Montana's bodily integrity was caused by other students at Stewarts Creek Elementary School that were bullying Montana, and by Montana's own acts in bringing about his death. Plaintiffs claim that school district officials caused Montana to be subjected to a deprivation of his right to bodily integrity by failing to investigate allegations of bullying, or intervene in his defense. However, this would require that the state have a constitutional duty to protect Montana from non-state actors, which the Fifth Circuit has articulated that it does not in the absence of a special relationship. Therefore, the Court recommends that Plaintiffs' claim under 42 U.S.C. § 1983 be dismissed.

### 3. *Monell* Municipal Liability

Plaintiffs also assert a claim under 42 U.S.C. § 1983 under *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978). In order to establish a claim of municipal liability, a plaintiff must show "three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom.'" *Doe,* 2012 WL 976349, at *15 (citing *Monell,* 436 U.S. at 694). Plaintiffs do not assert that Defendant's policies themselves are unconstitutional, but rather, Plaintiffs contend that instead of following the official policies, school district officials had customs and practices that replaced those policies (Dkt. #94 at 20).

However, "[w]ithout an underlying constitutional violation, an essential element of municipal liability is missing." *Doe,* 2012 WL 976349, at *15 (citing *Becerra v. Asher,* 105 F.3d 1042, 1048 (5th Cir. 1997)). Therefore, even if Defendant's custom of blatantly ignoring their policies, failing

11

to conduct investigations into bullying, and other practices by school officials was the moving force behind Montana's injury, there can be no § 1983 liability unless Montana suffered a constitutional violation. *See Doe*, 2012 WL 976349, at *15. There was no constitutional violation at the hands of the student bullies, or by Montana's own hand, because neither of these are state actors. The only state actions that could give rise to a constitutional violation are the school's failures to protect Montana from bullying, which as stated above are not sufficient to give rise to a claim under the special relationship theory. Therefore, the Court recommends that Plaintiffs' claim under 42 U.S.C. § 1983 for municipal liability also be dismissed. The Court further recommends that Defendant's motion for summary judgment on Plaintiffs' special relationship claims (Dkt. #76) be granted.

B.  *Defendant's Motion for Summary Judgment on Plaintiffs' Disability Discrimination Claims (Dkt. #75)*

Defendant moves for summary judgment on Plaintiffs' claims under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act ("ADA"). Defendant asserts that Plaintiffs cannot show that any LISD employees intentionally discriminated against Montana solely on the basis of his disability, nor that any alleged discrimination caused Plaintiffs' injuries (Dkt. #75 at 12). Plaintiffs contend that there is a material issue of fact as to whether Defendant employees intentionally discriminated against Montana on the basis of his disability (Dkt. #94).

The ADA and the Rehabilitation Act prohibit discrimination against individuals with disabilities. *Delano-Pyle v. Victoria Cnty*, 302 F.3d 567, 574 (5th Cir. 2002). Because the language of the ADA generally tracks the language set forth in the Rehabilitation Act, the "jurisprudence interpreting either section is applicable to both." *Id.* (citing *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)). In order to establish a claim under Section 504, a plaintiff must prove: (1) that he

12

is an individual with a disability; (2) that he was qualified; (3) that the program at issue receives federal funding; and (4) that he was discriminated against solely because of his disability. *Chandler v. City of Dallas*, 2 F.3d 1385, 1389-90 (5th Cir. 1993). Defendant does not challenge the first three requirements of the claim, but asserts that Plaintiffs cannot show that Montana was discriminated against solely because of his disability.

"A cause of action is stated under § 504 when it is alleged that a school district has refused to provide reasonable accommodations for the handicapped plaintiff to receive the full benefits of the school program." *D.A. v. Houston Independent School District*, 629 F.3d 450, 454 (5th Cir. 2010). The Fifth Circuit used the term "refusal" because the statute requires intentional discrimination against a student on the basis of his disability. *Id.* A plaintiff may only recover compensatory damages upon a showing of intentional discrimination. *Delano-Pyle*, 302 F.3d at 574. To substantiate a cause of action for intentional discrimination under Section 504, the plaintiff must demonstrate facts creating an inference of professional bad faith or gross misjudgment. *D.A.*, 629 F.3d at 455. "So long as state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under § 504." *Id.* at 454-55.

Plaintiffs argue that the expert report of Dr. Poland establishes that Defendant employees grossly departed from accepted standards among educational professionals. For example, Dr. Poland notes that Defendant failed to complete a final report on Montana's depression, reports of suicidality, and bullying incidents (Dkt. #94 at 27). He further points out Defendant's failure to adequately address Montana's suicidal ideations. *Id.* In addition, Dr. Poland points out that Defendant grossly mishandled disciplinary situations with Montana, especially considering his Behavior Intervention

13

Plan (BIP). *Id.* at 27.

Considering this evidence, as well as other evidence contained in the record, there is simply no evidence that any of Defendant's employees intentionally discriminated against Montana solely because of his disability. The actions, or failure to act, on the part of LISD employees do not amount to intentional conduct. At most, the conduct could be negligence or gross negligence; however, the standard required by the Fifth Circuit is intentional discrimination. Further, there is simply no evidence and no allegation that these actions were taken against Montana solely on the basis of his disability. Therefore, for these reasons, the Court recommends that Defendant's Motion for Summary Judgment on Plaintiffs' Disability Discrimination Claims (Dkt. #75) be granted, and Plaintiffs' claims under § 504 be dismissed.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff's Motion for Partial Summary Judgment (Dkt. #60) be **DENIED.**[5]

The Court further finds that Defendant's Motion to Dismiss Plaintiffs' Section 1983 Claims Pursuant to *Doe v. Covington* (Dkt. #71) is **DENIED** as moot.

The Court further recommends that Defendant's Motion for Summary Judgment on Plaintiffs' Disability Discrimination Claims (Dkt. #75) be **GRANTED**.

The Court further recommends that Defendant's Motion for Summary Judgment on

---

[5]Plaintiffs' motion for partial summary judgment requests summary judgment on Defendant's affirmative defense of causation. Specifically, Plaintiffs ask the Court to determine whether Defendant can present sufficient evidence to establish the elements of its affirmative defense challenging causation (Dkt. #60 at 2). Because the Court recommends granting both of Defendant's motions for summary judgment on other grounds, this Court also recommends that Plaintiffs' motion be denied as moot. However, even if this were not the case, the Court would recommend that Plaintiffs' motion be denied because there is a genuine dispute of material fact as to whether any alleged violation of Plaintiffs' rights was caused by a policy, custom, or practice of Defendant.

14

Plaintiffs' Special Relationship and State Law Claims (Dkt. #76) be **GRANTED**.

The Court further finds that Defendant's Objections to and Motion to Strike Plaintiffs' Summary Judgment Evidence (Dkt. #98) be **DENIED** as moot.[6]

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

   **SIGNED this 11th day of May, 2012.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE

---

[6]The Court did not rely on any of the objectionable evidence while considering the parties' motions for summary judgment, and finds that Defendant's objections should be overruled and the motion denied as moot.

USCA5 4772

# TAB 6

** NOT FOR PRINTED PUBLICATION **

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF MONTANA LANCE, BY | § | |
| AND THROUGH JASON AND DEBORAH | § | |
| LANCE, INDIVIDUALLY AND ON | § | |
| BEHALF OF HIS HEIRS, | § | Civil Action No. 4:11-cv-32 |
| | § | |
| *Plaintiffs,* | § | JUDGE CLARK/JUDGE MAZZANT |
| | § | |
| v. | § | |
| | § | |
| CAROL KYER *et al,* | § | |
| | § | |
| *Defendants.* | § | |

## ORDER OVERRULING PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION

On January 21, 2011, Plaintiffs The Estate of Montana Lance, by and through Jason and

Deborah Lance, individually and upon behalf of his heirs, filed suit against Defendants Carol Kyer

*et al,* alleging claims under 42 U.S.C. § 1983; the Americans With Disabilities Act ("ADA");

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a; and Texas state law.

The court referred this matter to United States Magistrate Judge Amos Mazzant for pretrial

proceedings. Judge Mazzant entered a Report and Recommendation on May 11, 2012 recommending

that Defendants' motions for partial summary judgment on Plaintiffs' disability discrimination

claims and special relationship/state law claims be granted. In light of this recommendation, Judge

Mazzant then recommended that Defendants' motions to dismiss Plaintiffs' Section 1983 claims and

strike Plaintiffs' summary judgment evidence, as well as Plaintiffs' motion for partial summary

judgment, all be denied as moot.

1

USCA5 5073

The court has conducted a careful *de novo* review of the objections to the Report and Recommendation and, based on the relevant pleadings, motions, exhibits, and orders, overrules Plaintiffs' objections. Defendants' objections to the Report and Recommendation are overruled as moot.

## I. BACKGROUND

Plaintiffs state that they "object to each of the Report's factual findings . . . listed below for the reasons set forth herein." Doc. # 130 at 4. To a large extent, Plaintiffs are conflating objections to factual findings and objections to legal conclusions. Nevertheless, the court views the facts in the light most favorable to Plaintiffs for purposes of this Order, and provides record citations to Plaintiffs' summary judgment briefing and evidence where appropriate.

Montana Lance was born on March 2, 2000. Doc. # 94 at 8 (Pls. Resp. to Def. Mot. Sum. J.). A psychiatrist diagnosed Montana with Attention Deficit Hyperactivity Disorder (ADHD), emotional disturbance, and speech impairment, all of which qualified Montana for special education services pursuant to the Individuals With Disabilities Act ("IDEA"). *Id.* Montana began kindergarten in 2005 at Stewarts Creek Elementary School, which is within Defendant Lewisville Independent School District ("LISD").[1] *Id.*

Plaintiffs contend that students at Stewarts Creek bullied Montana from kindergarten through the fourth grade, and that school personnel knew of the bullying. *Id.* In a school journal, Montana identified bullying as a problem or challenge that was beyond his ability or too difficult to tackle. Doc. # 94-25. According to Plaintiffs, Stewarts Creek personnel labeled Montana as a "bad child" and "tattletale" for reporting the bullying. Doc. # 94 at 8. Plaintiffs contend that LISD failed to

---

[1]The remainder of the Defendants are various LISD officials.

2

investigate Plaintiffs' allegations of bullying, which violated Defendant's own official policies on bullying or suspected bullying. *Id.* at 9.

Plaintiffs also contend that Montana made numerous suicidal threats to his parents and to mental health professionals, including LISD personnel. *Id.* At a regularly-scheduled Admission, Review, and Dismissal (ARD) meeting in April 2008, Montana's mother told Stewarts Creek personnel that Montana wanted to hurt himself, and a school committee ordered a full psychological evaluation. *Id.* at 11; *see also* Doc. # 94-36, 37.

Montana and both of his parents completed psychological assessments after the April 2008 ARD. Plaintiffs allege that the test results satisfy the diagnostic criteria for major depressive disorder, autism, and Asperger's syndrome. Doc. # 94 at 11; Doc. # 94-27, 38, 39. However, Plaintiffs have pointed to no official diagnosis of any of these conditions. It is undisputed that Defendants did not add these diagnoses to Montana's Individualized Education Plan (IEP), Plaintiffs did not receive a report of the psychological diagnosis, and Stewarts Creek officials have not located any documents to demonstrate that the School ever created a report. Doc. # 94 at 11; Doc. # 94-2 at 6:20-8:24; Doc. # 94-17 at 75:22-76:5.

In November and December 2009, Stewarts Creek personnel disciplined Montana for his involvement in several altercations with other students. Doc. # 94 at 12-13; Doc. # 94-23, 41, 44. Plaintiffs assert that other students provoked the altercations and that Montana was reacting to their bullying. Doc. # 94 at 12-13. On December 18, 2009, in response to some students who threatened to "beat him up," Montana pulled a small penknife out of his pocket. *Id.* at 13; Doc. # 94-23. Montana was sent to alternative school for ten days, and the other students involved received one day of expulsion. *Id.*

3

USCA5 5075

Montana's parents appealed his placement in alternative school to both Stewarts Creek's principal and to the Executive Director of Student Services for LISD. Doc. # 94 at 15. Montana's parents made both of these individuals aware of Montana's reports of bullying during the incident. *Id.* Ultimately, Montana's time in alternative school was reduced to eight  days. Doc. # 94-49.

On January 12, 2010, while in alternative school, Montana threatened to kill himself. Doc. # 94 at 16; Doc. # 94-26. The alternative school's counselor who met with Montana determined that he was not a "high risk student." Doc. # 94-9 at 54:7-55:7.

On January 21, 2010, Montana returned to Stewarts Creek. That day, a student in the cafeteria called Montana a name and shoved him, Doc. # 94 at 16; according to Defendants, this was because Montana had cut ahead of this student in line. Montana was sent to the principal's office later the same day for talking, and placed in a segregated environment in the office area of the school. *Id.* School personnel required Montana to use the restroom in the School nurse's office instead of the regular student restroom. *Id.* at 16-17.

On this day, Montana locked himself inside the Nurse's office restroom for an extended period of time. *Id.* at 16.[2] Ultimately, the door had to be opened with a screwdriver because a key could not be located. *Id.* at 16-17.  While locked inside of the restroom, Montana hanged himself with his own belt.

---

[2]According to Defendants, it was not unusual for Montana to stay in restrooms in general for a longer than average period of time. Plaintiffs claim that Montana and other children had locked themselves in the same Nurse's office restroom in the past.

4

## II. DISCUSSION

Judge Mazzant's Report and Recommendation provided suggested dispositions of a number of pending motions. The court summarizes those recommendations below, before addressing and overruling Plaintiffs' objections.

**A.     The court will adopt Judge Mazzant's ruling with respect to Defendants' motion for partial summary judgment on Plaintiffs' Section 1983 and state law claims**

The Report and Recommendation first recommended granting Defendants' motion for partial summary judgment on Plaintiffs' Section 1983 and state law claims[3]. Plaintiffs' objections do little more than refer the court to their previous summary judgment briefing.

Plaintiffs asserted three different types of Section 1983 claims: (1) under the special relationship theory; (2) under the "causes to be subjected" language of Section 1983; and (3) for *Monell* liability. Judge Mazzant recommended granting the motion on all three claims, and also declined to reconsider its prior dismissal of Plaintiffs' Section 1983 claims under the state-created danger theory. The court addresses, and overrules, Plaintiffs' objections below.

1.     *Plaintiffs' special relationship and state-created danger theories are foreclosed by Covington*

With respect to the special relationship and state-created danger theories, Judge Mazzant correctly cited the recent case of *Doe ex rel. Magee v. Covington County School District ex rel. Keys*, 675 F.3d 849 (5th Cir. 2012). That case clearly states that the Fifth Circuit "has not adopted the 'state-created danger' theory of liability." *Id.* at 865 (internal quotation omitted).

---

[3]Judge Mazzant previously recommended dismissal of Plaintiffs' state law claims. Doc. # 106. The motion was not opposed, and no objections were filed. The court hereby adopts that Report and Recommendation, and dismisses Plaintiffs' state law claims.

USCA5 5077

Further, the Fifth Circuit has consistently rejected the idea that the "special relationship" theory of liability—i.e., when the State has a duty to protect individuals against private violence—extends past three very specific situations: when the state (1) incarcerates a prisoner; (2) involuntarily commits a person to an institution; or (3) places a child in foster care. *Id.* at 856 ("We have not extended the . . . special relationship exception beyond those three situations, and have explicitly held that the state does *not* create a special relationship with children attending public schools.") (emphasis in original).

This situation does not fall into one of these categories. There is no evidence that Montana was incarcerated, involuntarily committed, or in foster care when he was placed in the office area on the day of his death. *Covington* reiterated that compulsory education laws alone do not create a special relationship. *Id.* at 861. Compulsory education laws restrict a child's freedom by definition, and the specific location of Montana on the day of his death does not compel a different result. School officials did not lock Montana in the restroom; Montana did. And there is no indication Montana could not leave at the end of the school day, or that if his parents had wanted to pick him up from school early they could not have done so.

  2. *Plaintiffs' "causes to be subjected" claim fails*

Section 1983 states that "Every person who under color of [law] . . . . causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

Crediting Plaintiffs' allegations, the constitutional violation alleged—bodily integrity—was caused by the bullying by other students at Stewart's Creek and Montana's own actions on the day of his death. Defendants may not have adequately investigated these incidents, but, as discussed

6

above, Defendants have no constitutional duty under the facts of this case and *Covington* to protect Montana from private actors. The court agrees with Judge Mazzant's recommendation that Plaintiffs' "causes to be subjected" claim should be dismissed, and overrules Plaintiffs' objections.

      3.    *Plaintiffs' Monell liability claim fails*

     Again, Defendants have no constitutional duty to protect Montana from private actors under *Covington*. Without "an underlying constitutional violation, an essential element of municipal libaility is missing." *Covington*, 675 F.3d at 866-67 (internal quotation omitted). The court agrees with Judge Mazzant's recommendation to grant summary judgment on this claim.

**B.    The court will adopt Judge Mazzant's ruling with respect to Defendants' motions for partial summary judgment on Plaintiffs' Section 504 and ADA claims**

     Judge Mazzant next recommended granting Defendants' summary judgment motion on Plaintiffs' disability discrimination claims under Section 504 of the Rehabilitation Act and the ADA, concluding that Plaintiffs cannot demonstrate an essential element of these claims, namely that any LISD employees intentionally discriminated against Montana solely on the basis of his disability. *See, e.g., Chandler v. City of Dallas*, 2 F.3d 1389-90 (5th Cir. 1993) (fourth element of a Section 504 claim is that discrimination solely on the basis of a disability).[4]

     Plaintiffs object to Judge Mazzant's Report and Recommendation, primarily arguing that the standard for intentional discrimination is something less than deliberate indifference, that a single episode of discrimination can satisfy that requirement, and that a separate claim exists for disability-based peer-on-peer harassment.

---

[4]Because the language of the ADA generally tracks that of the Rehabilitation Act, the "jurisprudence interpreting either section is applicable to both." *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002).

The treatment of peer bullying by LISD and Stewart's Creek officials is, in the court's opinion, inadequate. If Plaintiffs'—often uncontested—facts are to be believed, the Defendants' approach to what seems to be fairly wide-spread bullying based on Plaintiffs' summary judgment evidence is to bury their collective heads in the sand. When faced with a fork in the road, the District's choice seems to consistently be the path of inaction. Montana's death might have been preventable had Defendants chosen to act on the subject of bullying.

Montana's death is tragic, but Plaintiffs' summary judgment record still does not reveal a claim for disability discrimination. Nowhere in Plaintiffs' voluminous record is there *any* evidence that Montana was bullied or treated differently by school administration because of his disability, or his membership in any other federally protected class. To the contrary, what Plaintiffs' record reveals is that Defendants had a consistent policy of ignoring bullying against *all* students. That is not an issue within the limited jurisdiction of this court.[5] With one exception—that of the student with a hand deformity—none of the numerous students who gave accounts of bullying against them in support of Plaintiffs' summary judgment motion state that they are disabled, or have any kind of handicap. And while Stewart's Creek officials may have labeled Montana a troublemaker and believed the bullying students' story instead of Montana's when incidents of bullying were reported, there is, again, no indication that they did so in any way based on his disability.

The court therefore overrules Plaintiffs' objections and adopts Judge Mazzant's Report and Recommendation.

---

[5]The formation and powers of school districts and whether school districts should be liable for torts that injure students are matters to be addressed by the state legislature, which weighs the fiscal benefits of governmental immunity against potential harm to individual students when particular school officials and districts are negligent or even deliberately indifferent.

8

**C.     The court will adopt Judge Mazzant's rulings on the remaining motions**

Judge Mazzant also: (1) denied as moot Plaintiffs' motion for partial summary judgment on Defendants' affirmative defense of causation in light of the recommendation to grant summary judgment in Defendants' favor on Plaintiffs' claims; (2) denied as moot Defendants' motion to dismiss Plaintiffs' Section 1983 claims under *Covington*, as the motion for summary judgment on the same grounds was granted; and (3) denied as moot Defendants' objections to and motion to strike Plaintiffs' summary judgment evidence, as it did not rely on any of the questioned evidence in considering the parties' summary judgment motions.

The court adopts Judge Mazzant's rulings on these three motions. To the extent that this court relied on any of Plaintiffs' summary judgment evidence that Defendants objected to, such reliance is harmless in light of the fact that Defendants' summary judgment motions were granted.

Finally, as Defendants' summary judgment motions were granted, the court denies as moot any objections Defendants lodged to either Judge Mazzant's Report and Recommendations on the dispositive motions or Judge Mazzant's Memorandum Opinion and Order disposing of the parties' motions to strike expert witnesses.

IT IS THEREFORE ORDERED that the court OVERRULES the parties' objections and ADOPTS Judge Mazzant's Report and Recommendation.

IT IS FURTHER ORDERED that Defendant Lewisville Independent School District's Motion to Dismiss Plaintiffs' State Law Claims [Doc. # 70], Motion for Partial Summary Judgment on Discrimination Claims [Doc. # 75], and Motion for Partial Summary Judgment on Special Relationship and State Law Claims [Doc. # 76] are GRANTED.

USCA5 5081

IT IS FURTHER ORDERED that Plaintiffs The Estate of Montana Lance *et al*'s Motion for Summary Judgment [Doc. # 60] and Defendant Lewisville Independent School District Motions to Dismiss Section 1983 Claims [Doc. # 71], Motion to Strike Plaintiffs' Summary Judgment Evidence [Doc. # 98], and Motion for Continuance of Trial Based on Pre-Trial Publicity [Doc. # 129] are DENIED AS MOOT.

So **ORDERED** and **SIGNED** this **11** day of **September, 2012.**

_Ron Clark_
Ron Clark, United States District Judge

10

USCA5 5082

# TAB 7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF MONTANA LANCE, BY AND THROUGH JASON AND DEBORAH LANCE, INDIVIDUALLY AND ON BEHALF OF HIS HEIRS, | § § § § § | Civil Action No. 4:11-cv-32 |
| *Plaintiffs,* | § § | JUDGE CLARK/JUDGE MAZZANT |
| v. | § § | |
| CAROL KYER *et al,* | § § | |
| *Defendants.* | § | |

### FINAL JUDGMENT

This Final Judgment is entered pursuant to Fed. R. Civ. P. 58, and the court's Order Overruling Plaintiffs' Objections to Judge Mazzant's Report and Recommendation, entered contemporaneously with this Order.

IT IS ORDERED that Plaintiffs The Estate of Montana Lance, by and through Jason and Deborah Lance, individually and upon behalf of his heirs, shall TAKE NOTHING of and from their claims against Defendants Carol Kyer, Steve Waddell, Lea Land, Terry Lowry, and Lewisville Independent School District. Costs are taxed to Plaintiffs. All relief not specifically granted herein is DENIED.

So **ORDERED** and **SIGNED** this 11 day of **September, 2012.**

Ron Clark, United States District Judge

# TAB 8

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF MONTANA LANCE, BY AND THROUGH JASON AND DEBORAH LANCE, INDIVIDUALLY AND ON BEHALF OF HIS HEIRS, *Plaintiffs,* | § § § § § § | Civil Action No. 4:11-cv-32 |
| v. | § § § | JUDGE CLARK/JUDGE MAZZANT |
| CAROL KYER *et al,* *Defendants.* | § § § | |

## NOTICE OF APPEAL

Please take notice that The Estate of Montana Lance, by and through Jason and Deborah Lance, Individually and on behalf of his heirs, the Plaintiffs in this case, hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Order of September 11, 2012 overruling Plaintiffs' Objections to Report and Recommendation and from the Final Judgment entered in this action on September 11, 2012.

Respectfully submitted,

CIRKIEL & ASSOCIATES, P.C.

/s/ Martin J. Cirkiel
Mr. Martin Jay Cirkiel
State Bar No. 00783829
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658
(512) 244-6014 facsimile

BEARD KULTGEN BROPHY
BOSTWICK DICKSON & SQUIRES, LLP
Rod S. Squires
State Bar No. 18979300
Ryan C. Johnson
State Bar No. 24048574
Melissa Waden Wray
State Bar No. 24008614

220 South Fourth Street
Post Office Box 21117
Waco, Texas 76702-1117
(254) 776-5500
(254) 776-3591 facsimile

THE ZIMMERMAN LAW FIRM
Mr. Michael Zimmerman
State Bar No. 22271400
3501 W. Waco Drive
Waco, Texas 76710
(254) 752-9688
(254) 752-9680 facsimile

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify that on October 9, 2012, a true and correct copy of the foregoing instrument was served on the following counsel of record by Notice of Electronic Filing:

Thomas P. Brandt
Joshua A. Skinner
Fanning Harper Martinson Brandt & Kutchin, PC
Two Energy Square
4849 Greenville Ave., Suite 1300
Dallas, Texas 75206

**ATTORNEYS FOR DEFENDANTS**

/s/ Martin J. Cirkiel
Mr. Martin Jay Cirkiel

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| THE ESTATE OF MONTANA LANCE, BY AND THROUGH JASON AND DEBORAH LANCE, INDIVIDUALLY AND ON BEHALF OF HIS HEIRS, *Plaintiffs*, | § § § § § | |
| | § | Civil Action No. 4:11-cv-32 |
| *v.* | § § | JUDGE CLARK/JUDGE MAZZANT |
| CAROL KYER *et al*, *Defendants*. | § § § | |

## NOTICE OF APPEAL

Please take notice that The Estate of Montana Lance, by and through Jason and Deborah Lance, Individually and on behalf of his heirs, the Plaintiffs in this case, hereby appeal to the United States Court of Appeals for the Fifth Circuit from the Order of September 11, 2012 overruling Plaintiffs' Objections to Report and Recommendation and from the Final Judgment entered in this action on September 11, 2012.

Respectfully submitted,

CIRKIEL & ASSOCIATES, P.C.

/s/ Martin J. Cirkiel
Mr. Martin Jay Cirkiel
State Bar No. 00783829
1901 E. Palm Valley Blvd.
Round Rock, Texas 78664
(512) 244-6658
(512) 244-6014 facsimile

BEARD KULTGEN BROPHY
BOSTWICK DICKSON & SQUIRES, LLP
Rod S. Squires
State Bar No. 18979300
Ryan C. Johnson
State Bar No. 24048574
Melissa Waden Wray
State Bar No. 24008614

220 South Fourth Street
Post Office Box 21117
Waco, Texas 76702-1117
(254) 776-5500
(254) 776-3591 facsimile

THE ZIMMERMAN LAW FIRM
Mr. Michael Zimmerman
State Bar No. 22271400
3501 W. Waco Drive
Waco, Texas 76710
(254) 752-9688
(254) 752-9680 facsimile

### ATTORNEYS FOR PLAINTIFFS

### CERTIFICATE OF SERVICE

I certify that on October 9, 2012, a true and correct copy of the foregoing instrument was served on the following counsel of record by Notice of Electronic Filing:

Thomas P. Brandt
Joshua A. Skinner
Fanning Harper Martinson Brandt & Kutchin, PC
Two Energy Square
4849 Greenville Ave., Suite 1300
Dallas, Texas 75206

### ATTORNEYS FOR DEFENDANTS

/s/ Martin J. Cirkiel
Mr. Martin Jay Cirkiel

USCA5 5149